STATE, Respondent, vs. FRICKE, Appellant.

*June 6—June 26, 1934.*

For the appellant there were briefs by *Meyer & Cashman* of Manitowoc, and oral argument by *John R. Cashman.*

For the respondent there was a brief by the *Attorney General, Kenneth C. Healy,* district attorney of Manitowoc county, and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Healy* and *Mr. Messerschmidt.*

NELSON, J. The defendant contends: (1) That the court erred in failing to direct a verdict of not guilty because the state failed to adduce evidence sufficient to prove beyond a reasonable doubt that the defendant was guilty of the crimes charged; (2) that the court erred in adjudging the defendant guilty of the crimes charged because the evidence adduced was insufficient to prove beyond a reasonable doubt that the defendant was guilty of the crimes charged; and (3) that the court erred in failing to set the verdict aside and grant a new trial because the verdict was contrary to

law, contrary to the evidence, was the result of passion and prejudice, and because justice had not been done. Since all of the errors assigned relate to the sufficiency of the proof it will be necessary to review the evidence.

On June 26, 1933, the defendant was a widower sixty-four years of age, the father of three grown-up children, and resided in a small tavern which he operated on State Highway 42, at a point three or four miles distant from the city of Manitowoc. For many years he had been the owner of a house located on Fox road in the outskirts of, but within the city of Manitowoc. Prior to a few days preceding June 26, 1933, that house had been occupied by his son Charles as his residence. The son vacated the premises at least two days before June 26th, when the building was burned. The premises upon which the vacant building was situated consisted of about seventeen acres of land worth from $100 to $200 per acre. There was also a barn and a garage upon the premises. The premises were subject to a judgment of foreclosure for $3,793.86, entered June 26, 1932. Sale pursuant to that judgment occurred on or about June 24, 1933, the plaintiff mortgagee having bid for such premises the full amount of its claim, subject of course to confirmation by the court. The son who removed from the premises was employed in the city of Manitowoc. Upon removing from the house he and his wife took up their abode in very limited and inconvenient quarters in his father's tavern some four and six-tenths miles from the house in question. The defendant, in addition to the mortgage debt, owed a judgment for $1,095.55 entered of record against him on June 1, 1933, a $280 balance of the $300 purchase-price of a filling station, and a few other small bills. He apparently had no cash in bank or in hand. The house was insured for $3,500, the barn for $1,000, and the contents of the house for $1,600. The house was totally destroyed by fire during the early morning hours of June 26th. The fire was first discovered at about 2 o'clock. Two witnesses who

were seated in an automobile parked on the east side of the road about a block away and facing north toward the Fricke house, observed a small automobile approach from the north and turn into the driveway of the Fricke house at about 12:25 o'clock on the morning of June 26th. In about fifteen minutes the automobile was driven out of the Fricke driveway and north along the Fox road for a distance of about two blocks before its lights were turned on. June 26th was a Monday. During the preceding Saturday night it had rained. The Fricke driveway was of dirt construction and its condition after the rain was such that an automobile going along it would leave well defined tracks. Some time after the fire several witnesses observed that only two automobiles had been driven along the Fricke driveway since the rain. One of the tracks was unquestionably made by the city fire-truck and the other, by a small car. The track left by the small car was smooth. The small car tracks went along the south side of the house, turned to the left east of the house, backed up to the southeast, and then turned west along the driveway. The fire chief testified that when he arrived at the fire it was burning on all three floors and that all of the shades of the house were drawn. Between 7 and 8 o'clock following the fire the fire chief and a police officer went out to defendant's tavern to interview him regarding the fire. They found him in his tavern and engaged in conversation with him. He appeared to the officers to be nervous. They observed that his hand trembled when he attempted to light his pipe. The defendant told the officers where he had been the night before, just when he returned home and went to bed. He told the officers that he had driven his son's Ford roadster to a tavern and dance hall located at Branch about four and eight-tenths miles from his tavern, and that he stayed there until shortly before 12 o'clock. The officers examined the tires of the Ford roadster which was in the tavern yard at the time and found the tires to be worn and smooth. Upon the trial the defendant

denied setting the house on fire, testified that he was at the Branch tavern until a little before 12, that he came directly home, and after winding two clocks which permitted him to note the exact time, went to bed where he remained until morning. Charles Fricke, Jr., a son, corroborated the defendant as to the time he returned home. He testified that he was in bed when his father came home, that he was just dozing off, that he heard the car drive into the yard, heard his father walk in the front door, snap on the light, wind the clock in the barroom, wind the clock in his room, and that he then looked at his own clock and observed that it was half past twelve by it, which, however, was running twenty minutes fast. He further testified that only two of the tires on his roadster were smooth and that the other two tires had treads which would have left clearly observable marks in the dirt driveway under the conditions which indisputably existed during the early morning of June 26th. Defendant attempted to show that the fire might have been caused by a short circuit. The son Charles was an experienced electrician. He testified that while he was living in the house the lights in the dining-room occasionally flickered which indicated to him that the wiring was defective. The son's wife testified that the lights throughout the house occasionally became dim. There was other testimony to show that fires now and then are caused by defective wiring. A reading of the record reveals that there were marked discrepancies between the statements made by the defendant and his son Charles to the officers mentioned and to Mr. Finnegan, state fire marshal, who investigated the fire shortly after its occurrence, and the testimony given by both the defendant and his son upon the trial.

It is our opinion that the jury was justified in believing beyond a reasonable doubt: (1) That the fire was of incendiary origin; (2) that the occupant or occupants of the small automobile, which was driven into the Fricke yard at 12:25 on the morning of June 26th, set fire to the house;

(3) that the defendant had a very strong motive for burning the house so that he might recover the insurance on the house, on the household furniture, and possibly on the barn in case the fire spread to it, and thereby obtain funds with which to pay a large part of his mortgage indebtedness, permitting him to save his seventeen acres of land.

The only serious question in the case is whether the small automobile which was driven into the Fricke yard at 12:25 and out again at about 12:40 shortly before the fire was sufficiently identified as the son's roadster. If the son's automobile at the time was equipped only with smooth tires as described by the fire chief and the police officer, that constituted a rather strong circumstance which might be given considerable weight by the jury along with the other circumstances tending to connect the defendant with the crime, since he was concededly using that car up to the time when he asserts that he returned to his tavern. The defendant's explanation of how he happened to visit the Branch saloon and dance hall on the Sunday night preceding the fire was not at all satisfactory. He refused to testify that he had been at that tavern within a year or two prior to that time and gave no reasonable explanation for his going there on that occasion. Another son of the defendant resided in Manitowoc not far from the burned house. The defendant testified that that son came to the tavern and reported the fire to him about 7 o'clock in the morning after the fire. The defendant, however, did not manifest that very natural desire to be taken to the fire at once, but remained in his tavern until the fire chief and police officers came out to interview him.

The jurors had an opportunity to observe the defendant at the trial, to hear him testify, and to give to such testimony such weight as in their opinion it deserved. It was within the province of the jury to believe or disbelieve his testimony and that of his son. The jury evidently did not believe the story of the defendant as to the time he returned

home, as to his winding the clocks and observing the exact time, etc., nor the story of the son who sought to corroborate the defendant's testimony as to the time he returned home. The jury had a right to conclude that both the father and the son were not telling the truth, and that their testimony was corruptly fabricated for the purpose of proving an alibi.

The entire record has been read in accordance with our customary practice in criminal cases, to the end that we may as nearly as possible put ourselves in the position of the jury, and minutely examine the evidence as it was developed by question and answer.

It is the law of this state that if there is credible evidence which in any reasonable view supports a verdict in a criminal case it cannot be disturbed on appeal. *State v. Hintz,* 200 Wis. 636, 640, 229 N. W. 54, and cases there cited. A defendant has the right upon appeal or writ of error to demand the deliberate opinion and judgment of this court upon the question whether his guilt was sufficiently proven. *Parke v. State,* 204 Wis. 443, 444, 235 N. W. 775, and cases cited.

Occasionally when such grave doubts exist in our minds regarding the guilt of a defendant as to make us conscientiously believe that justice probably has miscarried, we exercise the authority specifically given to us by sec. 251.09, Stats., and reverse the judgment for a new trial. In our opinion this case is not one in which we may conscientiously exercise that authority.

Much of the argument of defendant's counsel is directed to some of the statements made by the trial judge upon the occasion of his overruling defendant's motions after verdict and in approving the verdict of the jury. Certain oral statements made at that time were not supported by the evidence. Undoubtedly the statements were inadvertently made. However we do not believe that such statements are of controlling importance, since it clearly appears that the trial judge was of the firm opinion that the evidence was amply sufficient to satisfy the jury beyond a reasonable doubt that the defend-

ant was guilty.  It is well known that juries often are loath to return verdicts of guilty in arson cases, especially when the evidence is wholly circumstantial.

In this case we have a verdict of guilty which has been approved by an able trial judge.  We have read the record with the errors assigned constantly in mind, with the result that we cannot say that the verdict is not supported by the evidence or conscientiously say that justice has probably miscarried.

*By the Court.*—Judgment affirmed.