STATE, Respondent, v. KRAMER, Appellant.*

*No. State 68. Argued October 31, 1969.—Decided November 25, 1969.*
(Also reported in 171 N. W. 2d 919.)

[16] *Dees v. Dees, supra,* footnote 10, at page 444.
* Motion for rehearing denied, without costs, on March 3, 1970.

26

For the appellant there was a brief by *James D'Amato,* attorney, and *Neal P. Nettesheim* of counsel, and oral argument by *James J. Caldwell,* all of Waukesha.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Roger P. Murphy,* district attorney of Waukesha county.

HEFFERNAN, J.

*Did the court abuse its discretion in denying defendant's motion for change of venue*

The defendant filed an affidavit pursuant to sec. 956.03 (3), Stats., claiming that an impartial trial could not be had in Waukesha county because of community prejudice. He also filed an affidavit by a William B. Hale, Jr., a reporter for the *Milwaukee Journal.* In that affidavit Hale stated that he made more than 125 telephone calls to adult residents in Waukesha county. He stated that he talked to 64 people who were willing to express their views. Of the 64 persons, all but one stated that he had heard or read about the Kramer case. Of those 64, 25 replied that they had formed an opinion in regard to the guilt or innocence of Kramer. All of those 25 stated that, in their opinion, Kramer was guilty of the Waukesha county charges. The other 38 stated either that they had an opinion but refused to state it or said

they had not formed an opinion. The affidavit of Hale was the only evidentiary matter of record that would tend to support the allegation of community prejudice.

In the defendant's brief, the background of the allegation of community prejudice is discussed, although without any evidentiary underpinning. It appears that the defendant was, in addition to the charges contained in the instant case, charged with two murders. The preliminary examination on the murders and the counts incorporated in this case was held at the same time, and the matters were separated for trial when the defendant was bound over to different courts. No attempt was made at the hearing for change of venue to submit newspaper articles or reports of radio or television programs that might have contributed to community prejudice. At the hearing on the change of venue, the defendant's attorney admitted that he had not read the Waukesha county papers. He did, however, charge that the local Waukesha county paper was "even worse than the Milwaukee Journal and the Milwaukee Sentinel— they, themselves, have come to the conclusion that Robert Kramer is guilty." This assertion is unsupported by any material of record. The motion for a change of venue was denied and the trial judge stated:

"The court will find that there is nothing in the record and the Court has not been in any way convinced by argument that the defendant cannot receive a fair and impartial jury to judge this case on its merits and, accordingly, will deny the motion for change of venue."

A change of venue, where there is community prejudice which will result in an unfair trial, is a constitutional right. That right in the case of a felony is implemented by sec. 956.03 (3), Stats.:

"COMMUNITY PREJUDICE. If a defendant who is charged with a felony files his affidavit that an impartial trial cannot be had in the county, the court may change the venue of the action to any county where an impartial

trial can be had. Only one change may be granted under this subsection."

We have stated in *State v. Laabs* (1968), 40 Wis. 2d 162, 166, 167, 161 N. W. 2d 249:

"A motion for change of venue because of community prejudice is addressed to the discretion of the trial court. Sec. 956.03 (3), Stats. This court will not interfere unless an abuse of discretion is demonstrated. *Miller v. State* (1967), 35 Wis. 2d 777, 151 N. W. 2d 688; *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155, certiorari denied, 380 U. S. 918, 85 Sup. Ct. 912, 13 L. Ed. 2d 803; *Schroeder v. State* (1936), 222 Wis. 251, 267 N. W. 899; *State v. Smith* (1930), 201 Wis. 8, 229 N. W. 51; *Krueger v. State* (1920), 171 Wis. 566, 177 N. W. 917."

In *Krueger v. State* (1920), 171 Wis. 566, 575, 177 N. W. 917, we discussed the rationale behind the reliance of this court upon the exercise of the trial judge's discretion:

"The difficulty of impressing upon the record a true concept of the public sentiment in the county is manifest. Just as the trial judge is in a better position to weigh the testimony of witnesses who appear before him, so is he in a better position to judge of the public sentiment of the county. He is on the ground and in a position to sense, in a way that this court cannot, the true sentiment of the community and to judge much more correctly whether it is such as to prevent a fair trial on the part of the defendants."

The *American Bar Association Standards Relating to Fair Trial and Free Press* is critical of "The judicial attitude [which] has taken the form of great deference to the discretion of the trial judge . . . ." It relies upon the recent Supreme Court decision in *Sheppard v. Maxwell* (1966), 384 U. S. 333, 86 Sup. Ct. 1507, 16 L. Ed. 2d 600, wherein the United States Supreme Court said:

"Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given

the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And *appellate tribunals have the duty to make an independent evaluation of the circumstances* . . . . But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." (pp. 362, 363.) (Emphasis supplied.)

This court has no quarrel with the admonitions of the *Sheppard Case.* A review of change-of-venue cases which have come before this court in recent years shows that in all cases we have looked to the evidence presented at the hearing and have examined the original sources and testimony with the purpose of determining whether or not, in view of such evidence, the trial court abused its discretion in denying a change of venue. The discretion of the judge is a sharply circumscribed one and must rest upon the consideration of evidentiary matters presented. If the evidence elicited, properly considered, gives rise to the reasonable likelihood that a fair trial cannot be had, it is an abuse of discretion to fail to grant a change of venue. This court in *State v. Alfonsi* (1967), 33 Wis. 2d 469, 147 N. W. 2d 550, suggests that, under aggravated circumstances, the trial court may act sua sponte to prevent an unfair trial as a result of prejudicial pre-trial publicity.

The defendant amply supports his legal position by the citation of the classical authorities, both state and federal, that require a change of venue where there is a likelihood that community prejudice will infect the fairness of the trial. However, the likelihood of such unfairness has not been shown factually herein. The sole evidentiary matter presented was the public opinion survey submitted in affidavit form which purported to show that 25 out of 64 persons contacted prior to trial concluded that the defendant was guilty. The assertion that

there was any prejudicial pretrial publicity in any of the news media is limited to counsel's statements in oral argument.

On the basis of the facts before the trial judge, we cannot conclude that he failed to properly exercise his discretion when he determined that there was little likelihood that Kramer would not receive a fair trial. From our own independent examination of the facts of record, we conclude that the vague allegations of improper and prejudicial pretrial publicity do not make a showing that the community was so infected with passion or prejudice as to make it likely that Kramer would not be fairly tried.

Moreover, there is little evidence that there was much difficulty in drawing a jury. Although no transcript was made of the *voir dire* proceedings, the attorney for the defendant, following the drawing of the jury, stated that when the jury panel was asked whether anyone had heard or read about the case, "only one person" chose to raise his hand. We have, of course, pointed out that whether or not a jury can be drawn is not conclusive on whether or not a change of venue should be granted; and in a case where it appears that the facts showed a reasonable likelihood that an unfair trial would ensue, the mere fact that a jury was speedily drawn does not cure the error of an improper denial of a change of venue. The *American Bar Association Standards Relating to Fair Trial and Free Press* points out the danger of relying *solely* on the drawing of a jury as a cure for an improper denial of a change of venue. It states, at pages 126, 127:

"There are two principal difficulties with this approach. First, many existing standards of acceptability tolerate considerable knowledge of the case and even an opinion on the merits on the part of the prospective juror. And even under a more restrictive standard, there will remain the problem of obtaining accurate answers on *voir dire*—is the juror consciously or subconsciously harboring prejudice against the accused resulting from widespread news coverage in the community? Thus if change of venue and continuance are to be of value, they

should not turn on the results of the *voir dire;* rather they should constitute independent remedies designed to assure fair trial when news coverage has raised substantial doubts about the effectiveness of the *voir dire* standing alone.

"The second difficulty is that when disposition of a motion for change of venue or continuance turns on the results of the *voir dire,* defense counsel may be placed in an extremely difficult position. Knowing conditions in the community, he may be more inclined to accept a particular juror, even one who has expressed an opinion, than to take his chances with other, less desirable jurors who may be waiting in the wings. And yet to make an adequate record for appellate review, he must object as much as possible, and use up his peremptory challenges as well. This dilemma seems both unnecessary and undesirable."

The position of the *American Bar Association Standards* has heretofore been taken into consideration by this court. In *State v. Herrington* (1969), 41 Wis. 2d 757, 764, 165 N. W. 2d 120, Mr. Justice CONNOR T. HANSEN, speaking for the court, stated:

"While the difficulty of securing a jury should never be conclusive in reviewing a refusal to change venue in a criminal case, precedent has said that it may be taken into consideration.

" ' "The apparent difficulty or ease of securing a jury can be taken into account in passing upon the alleged abuse of discretion in refusing a change of venue." ' *Miller v. State* (1967), 35 Wis. 2d 777, 785, 786, 151 N. W. 2d 688, quoting from *Bianchi v. State* (1919), 169 Wis. 75, 93, 171 N. W. 639.

" . . .

"On review of an alleged abuse of the trial court's discretion in failing to grant a motion for change of venue because of community prejudice and pretrial publicity, the ease of selecting a jury is not a criterion but an indicium."

Thus, while we do not consider the ease with which the jury was chosen to be controlling, that fact, coupled with the almost complete absence of evidentiary facts showing a basis for prejudice, is indicative that the circumstances

were not such that the trial court abused its discretion in denying the change of venue.

On the day the trial commenced, defense counsel renewed his motion for a change of venue on the ground that a number of the jury panel had admitted knowledge of the case. The trial judge observed, however, that, whenever defense counsel had challenged a juror, he was eliminated from the panel. The trial judge went on to say:

"The jurors cannot be expected to be unaware of community affairs and their knowledge of community affairs does not disqualify them as jurors. They stated that they were certain their knowledge would not prejudice the defendant."

The trial judge's statement in this regard is supported by the opinion of the United States Supreme Court in *Irvin v. Dowd* (1961), 366 U. S. 717, 722, 81 Sup. Ct. 1639, 6 L. Ed. 2d 751, by stating:

"It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case."

Sec. 270.17, Stats., codifies this rationale in Wisconsin. That statute provides in part:

"It shall be no cause of challenge to a juror that he may have obtained information of the matters at issue through newspapers or public journals, if he shall have received no bias or prejudice thereby . . . ."

The defendant also peripherally raises the question that he was denied a fair trial, but he fails to document this assertion in any way. The record is devoid of any impropriety at trial or any circumstances which would

infect the fact-finding process. In motions after verdict defense counsel himself stated:

"I believe we had a very intelligent group of jurors. I was satisfied and happy that these persons were intelligent and that is the type of person I sought out to act as jurors in this particular case and with the defendant working right along with me in making the selection of the jury."

We are satisfied that the change of venue was properly denied and that the defendant received a fair trial.

*Did the court err in failing to sua sponte
order a reporting of the voir dire examination*

The *voir dire* was not reported and, accordingly, no transcript is available. Defendant's counsel on this appeal contends that the trial court should have directed a reporting of the *voir dire* even in the absence of a request by counsel. No authority has been furnished which supports that contention, and our search has revealed none. At the time of this trial in 1967, the statutes did not provide for reporting of *voir dire* examinations. In that year, however, sec. 256.55 (3), Stats., was created providing that "Voir dire examinations in any civil or criminal action need not be reported unless ordered by the court." At the time of trial, the judge was without specific statutory authorization to direct a recording of the *voir dire,* although he would, no doubt, have the inherent power to do so. Moreover, the defendant failed to request a recording of the *voir dire* and did not contend, until this appeal, that there was error in failing to report the *voir dire.* As we have said in *Finger v. State* (1968), 40 Wis. 2d 103, 161 N. W. 2d 272, that matters not raised either at trial or by appropriate motion cannot be raised as a matter of right for the first time on appeal. During the course of oral argument in this court, counsel was asked what he would hope to prove were a *voir dire*

report available. He replied that he did not know—he thought it might show some facts probative of prejudice to the defendant. In these circumstances, where the defendant has failed to make the appropriate motion to ask for the reporting of *voir dire,* has not objected until this time, and has not indicated in what manner he has been prejudiced by the court's failure to order the reporting, we are satisfied that there is no error in not having reported the proceedings at the time of the selection of the jury.

*Was it error to join in one information the misdemeanor count in respect to the Moulton automobile with the misdemeanor and crimes charged in respect to Maureen Curtis and her automobile*

The joinder of crimes in a single complaint or information is governed by sec. 955.14 (1), Stats., which provides:

"The crime charged shall be stated in plain, concise language, without unnecessary repetition. Different crimes and different degrees of the same crime may be joined in one information, indictment or complaint."

The joinder permitted here by the court is ruled by the case of *Gutenkunst v. State* (1935), 218 Wis. 96, 99, 259 N. W. 610, wherein the court said:

"In a criminal case, at least so far as the pleading is concerned, no reasonable grounds exist for not including in the same indictment offenses committed by the same defendant, even though they differ from each other, vary in degree of punishment, and were committed at different times . . . ."

*Gutenkunst* permitted the joinder of five different crimes, some of which were misdemeanors and which were perpetrated against three different persons at different times. It appears that the joinder of these counts

in the information charging Kramer was not prohibited by the statute.

A note in 22 Minnesota Law Review (1937), 112, 113, points out that, though statutory language may not prohibit certain joinders, nevertheless under some circumstances a joinder can result in irremedial prejudice. It points out:

"Apart from statutory limitations . . . the only fundamental objection to joinder proceeds from the notion that a jury is likely to use evidence adduced in support of one charge to convict accused of another charge not independently nor adequately proved."

As pointed out in the statement of facts, the misdemeanor charges are not before this court on appeal, and the question of whether the three felony charges prejudiced the defendant on the trial of the two misdemeanors is accordingly not before us.

Federal Criminal Rule 8(a) is also informative of the rationale upon which offenses may be joined. That rule states:

"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Even under the more precise language of the Federal Rules, the joinder is proper. There was evidence which could lead the court and jury to conclude that the acts in regard to both the Moulton and Curtis automobiles were parts of a common scheme or plan, and it appears clear that the *modus operandi* in each case was of a similar character. Under the test suggested by the Minnesota Law Review article, *supra,* it is apparent that there was sufficient independent evidence to convict the defendant of the three felonies in regard to Maureen Curtis, even

in the absence of the evidence in regard to the Moulton incident.

## Sufficiency of the evidence

The only evidentiary question posed by the defendant's counsel and the crucial one in the case is the identification testimony given by two of the state's witnesses, Richard Ammentorp and Maureen Curtis. Ammentorp identified the defendant as being similar in appearance to the man he saw at the parking lot. True, Ammentorp first saw the suspicious conduct of the person, identified by him as the defendant, in regard to the automobile of Elizabeth Moulton, but the visual identification of the defendant was made after the Moulton incident when Ammentorp saw the dark-colored Ford drive up and down between the rows of parked cars. Moreover, the testimony of Maureen Curtis alone was, if believed, sufficient to identify the defendant as the man who committed the felonies. She got a good look at him. At trial she had no doubt about the identity, and the record also reveals that, after the police received the license plate identification number from Ammentorp, Maureen Curtis was given an opportunity to look at the defendant as he emerged from his home and when he went into a store. She testified that there was no doubt this was the man who had abducted her.

The defendant claims, however, that her testimony was seriously impeached, because it appears that at an earlier date, before Kramer was suspected, she tentatively identified another man who so resembled her attacker that "it could be his twin brother." However, the record reveals that, when she inspected the other suspect's automobile, she immediately stated that it was not the automobile in which she had been attacked. This contrasted with her positive identification of Kramer. She stated that Kramer was definitely "the man who attacked me."

She also testified that the defendant's automobile was similar to the one her attacker had driven, although the color was different.

On the basis of this testimony, "this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true" (*Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183), that the defendant, Robert M. Kramer, was the man who committed the felonies against Maureen Curtis. This evidence, of course, was entirely independent of any of the evidence connected wth the Moulton incident. The evidence was sufficient.

*Should a new trial be granted in the interest of justice*

In *Commodore v. State* (1967), 33 Wis. 2d 373, 383, 147 N. W. 2d 283, this court discussed its discretionary power to reverse in the interest of justice and order a new trial under sec. 251.09, Stats. We believe that the language used therein is appropriate in dismissing this contention:

"This power is exercised with 'some reluctance and with great caution' and only in the event of a probable miscarriage of justice. *Ferry v. State* (1954), 266 Wis. 508, 511, 63 N. W. (2d) 741. Such grave doubt must exist regarding a defendant's guilt to induce the belief that justice has miscarried. *State v. Fricke* (1934), 215 Wis. 661, 667, 255 N. W. 724. In *Lock v. State* (1966), 31 Wis. (2d) 110, 118, 142 N. W. (2d) 183, we stated:
" 'In order for this court to exercise its discretion and for such a probability [of a miscarriage of justice] to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial.' "

". . . There is nothing to indicate that justice has not been well served by this conviction, nor is there one shred

of evidence to indicate that a different result would obtain under optimum circumstances. It is most unlikely that a new trial would result in an acquittal."

*By the Court.*—Judgment affirmed.