TUCKER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 105. Submitted November 2, 1972.—Decided January 3, 1973.*

(Also reported in 202 N. W. 2d 897.)

730

For the plaintiff in error the cause was submitted on the brief of *Philip L. Atinsky* and *Atinsky, Kahn & Sicula,* all of Milwaukee.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

ROBERT W. HANSEN, J. Two errors are claimed by defendant. One: That the trial court abused its discretion in denying the defense motion for change of venue. Two: That the trial court abused its discretion in the imposition of sentence.

*Was there an abuse of discretion in the denial of the motion for change of venue?*

Defendant claims he was entitled to change of venue because of the extensive coverage by the news media

of the events involved in his case. Change of venue is a constitutional and statutorily guaranteed right where adverse community prejudice will make a fair trial impossible.[1] A motion for change of venue is addressed to the sound discretion of the trial court.[2] If the evidence on motion for change of venue gives rise to a reasonable likelihood that a fair trial cannot be had, it is an abuse of discretion to fail to grant a change of venue.[3] Where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the trial judge is to ". . . continue the case until the threat abates, or transfer it to another county not so permeated with publicity. . . ."[4]

While abuse of discretion is the test on appeal, an appellate court has ". . . the duty to make an independent evaluation of the circumstances. . . ."[5] In making such independent evaluation, this court has listed the factors relevant in determining whether a motion for change of venue should have been granted,[6] including: ". . . The inflammatory nature of the publicity; the degree to which the adverse publicity permeated the area from which the jury panel would be drawn; the timing and specificity of the publicity; the degree of care exer-

[1] *McKissick v. State* (1971), 49 Wis. 2d 537, 182 N. W. 2d 282; *State v. Kramer* (1969), 45 Wis. 2d 20, 171 N. W. 2d 919. *See also:* Sec. 971.22 (3), Stats.

[2] *State v. Kramer, supra,* at page 29; *State v. Laabs* (1968), 40 Wis. 2d 162, 161 N. W. 2d 249; *Miller v. State* (1967), 35 Wis. 2d 777, 151 N. W. 2d 688; *Schroeder v. State* (1936), 222 Wis. 251, 267 N. W. 899. *See also: Krueger v. State* (1920), 171 Wis. 566, 575, 177 N. W. 917, stating: ". . . Just as the trial judge is in a better position to weigh the testimony of witnesses who appear before him, so is he in a better position to judge of the public sentiment of the county. . . ."

[3] *State v. Kramer, supra,* at page 30.

[4] *Sheppard v. Maxwell* (1966), 384 U. S. 333, 363, 86 Sup. Ct. 1507, 16 L. Ed. 2d 600.

[5] *Id.* at page 362.

[6] *State v. McKissick, supra,* at page 545.

cised, and the amount of difficulty encountered, in selecting the jury; the extent to which the jurors were familiar with the publicity; and the defendant's utilization of the challenges, both peremptory and for cause . . . the participation of the state in the adverse publicity . . . the severity of the offense charged, and the nature of the verdict returned." [7]

Viewed in light of the relevant factors listed in *McKissick,* the situation in the present case appears to us to have been as follows:

*Nature of the publicity.* While only a part of the general media coverage of community tensions, disorders and criminal activities, there is no gainsaying that the killing of a peace officer, and wounding of several others, was the subject of intensive press and audio-visual news coverage. However, the principal news focus was on the death of one police officer and injuries to others, and emphasis soon shifted to the eventually successful battle for life of the police officer who had been shot in the head and face. The nature of such publicity, and the intensity of coverage, is not comparable to that involved in the *Sheppard Case* where news and editorial columns were directed to demanding the prosecution and conviction of the defendant involved. [8]

Our inquiry as to the nature of the accompanying publicity is limited to its impact upon charges involving the shootings outside the house. As to the shootings inside the house, the jury acquitted the defendant, so it cannot be argued that pretrial press coverage inflamed the jury against the defendant on that aspect of the case. As to the shootings outside the house, the defendant at the trial admitted such shootings, so the newspaper or media's earlier stating or implying that he did such shooting is hardly inconsistent with or

---

[7] *Id.* at pages 545, 546.

[8] *Sheppard v. Maxwell, supra,* at pages 338–342.

prejudicial to his courtroom testimony. It was why he shot, not whether he shot, that became the trial issue. Additionally, the press articles, specifically written about the defendant, stressed his being a respected, hardworking, dependable citizen.

*Timing of publicity.* Even if publicity in a particular forum is found to preclude a fair trial, the *Sheppard* mandate is to transfer the case or to "continue the case until the threat abates." [9] Without holding that "nothing is as dead as yesterday's newspapers," the *Sheppard* option clearly recognizes that the effect of newspaper, and certainly radio and television, coverage of events wanes with the passing of time. Here the crimes were committed on July 31, 1967. The trial began on June 26, 1968, nearly eleven months later. The 1967 references in the news media to the incidents steadily decreased in length and frequency. The record indicates no media references to the incidents involved for the six or seven months prior to trial. The effect of the passage of time is one factor to be considered on the right to a change of venue.

*Familiarity with publicity.* We find here every evidence of care being exercised in the selection of the jury, and no significant difficulty in the impaneling of the jury. The record here does establish that the jurors, or some among them, could remember reading about the case or hearing about it on the radio or television. That establishes knowledge of what was written or said, but that is not enough to rebut the presumption of a prospective juror's impartiality. To have obtained information of the matters at issue through newspapers, radio or television is not cause for challenge to a prospective juror in this state. [10] As

---

[9] *Id.* at page 363.

[10] Sec. 270.17, Stats, providing:

"It shall be no cause of challenge to a juror that he may have obtained information of the matters at issue through newspapers

the United States Supreme Court has put the matter: "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. . . ." [11]

*Nature of verdict.* There is no claim here that the prosecution sought or secured the publicity given in the media to the events that took place. So the remaining relevant factor, as listed in *McKissick,* is "the severity of the offense charged, and the nature of the verdict returned." Here, as to the shootings outside the house, the state charged the defendant with the crime of attempted murder, contrary to secs. 940.01 and 939.32, Stats. However, the jury found him not guilty of attempted murder, and guilty only of the lesser, but included, offense of endangering safety by conduct regardless of life, contrary to sec. 941.30. The jury acquitted the defendant of all charges involving shootings within the house. Actually the jury found the defendant not guilty of all offenses he denied, and found him guilty only of the lesser of the charges involved in the shootings he admitted. The "nature of the verdict returned" removes any basis that might otherwise exist for claiming that this jury was in any way prejudiced against this defendant.

The denial of the motion for change of venue was well within the limits of sound trial court discretion.

---

or public journals, if he shall have received no bias or prejudice thereby; . . ."

[11] *Irvin v. Dowd* (1961), 366 U. S. 717, 723, 81 Sup. Ct. 1639, 6 L. Ed. 2d 751, also holding, ". . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . ." *See also: Thomas v. State* (1972), 53 Wis. 2d 483, 492, 192 N. W. 2d 864, stating: ". . . Uneditorialized news of purely informational nature may inform possible members of a jury but such news does not necessarily create prejudice. An informed jury is not necessarily a prejudicial one. . . ."

*Was there an abuse of discretion in the sentence imposed?*

The defendant claims that the sentence imposed was not accompanied by a statement of the reasons for the sentence imposed. Defendant's brief asserts:

". . . Nowhere did Judge STEFFES state why the appellant should be sentenced to two years in prison rather than one, three years rather than two, four years rather than three, five years rather than four. Nowhere did Judge STEFFES state why the appellant should be sentenced to five consecutive terms rather than to concurrent terms. . . ."

Alternatively, defendant argues that, if statements made by the trial court at the time of sentencing "could conceivably be construed as his reasons," at least for incarceration, rather than probation, they were based on improper considerations. Given this "either-or" presentation, we would find that the trial court did not clearly state his specific reasons for imposing the particular sentence given.

However, the sentence here was imposed over two years prior to the *McCleary* decision [12] in which this court set forth a requirement that the sentencing judge is to state his reasons for selecting the particular sentence imposed. While the comments of the trial judge did not fully qualify as a sentencing statement under *McCleary*, *McCleary* does not apply. As to challenges to sentences imposed prior to *McCleary*, this court is ". . . to examine the record *ab initio* to determine whether the imposition of sentence constituted an abuse of discretion. . . ." [13]

[12] *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512.

[13] *State v. Morales* (1971), 51 Wis. 2d 650, 658, 187 N. W. 2d 841.

On this record, we have no hesitancy in finding the sentence imposed to be an entirely proper exercise of judicial discretion.[14] Factors relevant to the appropriateness of the sentence imposed clearly include: the gravity or seriousness of the offense, the nature of the conduct involved, and the consequential injuries inflicted upon another person.[15]

*Gravity of offense.* The seriousness of the crime of which a defendant is found guilty is an important factor in the sentencing process.[16] Here the defendant was found guilty of six counts of endangering safety by conduct regardles of life. In addition to the evident gravity and seriousness of such offenses, the nature of the conduct of the defendant that led to the charge being brought and the conviction returned is a relevant factor in sentencing. We are not dealing here with a spent bullet or stray pellet causing injury. Intent or reason for shooting aside, the defendant fired his shotgun, not once but several times. The shotgun blasts were directed at and hit not one, but several Milwaukee police officers. The shots were fired at close range. The defendant con-

---

[14] In *Lange v. State* (1972), 54 Wis. 2d 569, 577, 196 N. W. 2d 680, the court referred to the American Bar Association *Standards Relating to Sentencing Alternatives and Procedures* and noted: "The sentencing standards contemplate sentences of up to twenty-five years . . . for multiple offenses (sec. 3.4 (b) (i)). . . ."

[15] *See: Cheney v. State* (1969), 44 Wis. 2d 454, 171 N. W. 2d 339, 174 N. W. 2d 1; *State v. Harling* (1969), 44 Wis. 2d 266, 170 N. W. 2d 720. *See also:* 21 Am. Jur. 2d, *Criminal Law*, pp. 547–549, secs. 584 and 585.

[16] *State v. Erickson* (1972), 53 Wis. 2d 474, 482, 192 N. W. 2d 872, stating: ". . . In view of the serious nature of selling heroin—the public interest in combatting heroin traffic, the fact that imprisonment is statutorily mandated for second offenders, the cost in human lives and human suffering from the spread of heroin addiction—we doubt that many courts, in this state or elsewhere, are likely to grant probation to convicted heroin pushers or hard drug dealers. . . ."

tinued shooting outside the home as some of the wounded officers lay helpless in the street. So we deal with a finding of guilt on a serious felony charge, with the nature of the defendant's conduct an "aggravating factor" [17] insofar as appropriateness of maximum and consecutive sentences is concerned.

*Consequential injuries.* As a relevant factor in selecting an appropriate sentence, the trial court was entitled to take into consideration the injuries inflicted upon other persons by the acts of the defendant. As to the first shooting outside the house, a police officer was shot, at close range, in the face and head. The testimony of a treating physician was that the hole blown in the side of his face was large enough so that the doctor could put his fist into it. Literally, a portion of his face was blown off. Much of the press publicity involved in this case dealt with the long battle of the wounded law officer for his life. Only modern medical science and the sturdy condition of the officer shot gave that fight for life a victorious outcome. The injuries sustained by those injured by the shotgun blasts fired by the defendant are a relevant factor on the propriety of imposing maximum and, with a single exception, consecutive sentences.

*Possible verdict.* As to the shootings outside the house, six counts went to the jury on the charge of attempted murder. The jury found the defendant guilty on the lesser, and included, charge of endangering safety by conduct regardless of life. The record, as the trial court commented at the time of sentencing, clearly would have sustained a verdict of guilty on the six counts of attempted murder.

[17] *See: Brown v. State* (1971), 52 Wis. 2d 496, 500, 190 N. W. 2d 497, stating: "We think that this case is sufficiently 'aggravated' to permit the trial court, in the exercise of its sound discretion, to impose the maximum prison sentence. . . ."

The defendant claims the fact that the trial judge mentioned that the defendant could have been found guilty of attempted murder on the record established introduced an improper element into the sentencing process. The defendant claims that "Judge STEFFES sentenced the appellant for crimes of which he was acquitted." We have found the trial court's general comments not to constitute a sentencing statement setting forth reasons for imposing a particular sentence. However, we would not find error in a trial court's mentioning, where such is the case, that in his opinion the facts adduced at trial would have supported a conviction on a more serious charge.[18] This may well not be a completely separate or separable factor insofar as selection of sentence is concerned. But it clearly goes to the seriousness of the offense and the particular acts or conduct of the defendant. That the record here would have supported convictions on six charges of attempted murder identifies the exact nature and evident gravity of the offenses committed. To fire a shotgun at short range at or toward other persons is something different from throwing a fist or heaving a brick. To note that the defendant here could have been convicted on this record of attempted murder is to do no more than to note that difference.

Our evaluation of the record, insofar as it relates to the appropriateness of the sentences imposed, can conclude with noting, that, as to trial court sentences, ". . . an abuse of discretion will be found only where there is no rational basis for the imposition of the

[18] See: Day v. State (1972), 55 Wis. 2d 756, 762, 201 N. W. 2d 42, where the sentence was upheld, when at the time of sentencing the trial court stated, "This could have been a verdict on either charge. . . . this offense as against murder in the first degree, of which the jury might well have convicted him under the facts. . . ."

sentence or these rationale are not articulated in, or inferable from, the record, or where discretion is exercised on the basis of clearly irrelevant or improper factors. . . ." [19]

We find the sentence or sentences here imposed to be entirely appropriate and well within the range of judicial discretion.

*By the Court.*—Judgment and orders affirmed.

---

[19] *Davis v. State* (1971), 52 Wis. 2d 697, 699, 190 N. W. 2d 890, citing *McCleary v. State, supra.*