JONES, Plaintiff in error, v. STATE, Defendant in error.

*No. State 105. Submitted under sec. (Rule) 251.54 November 1, 1974.—Decided December 20, 1974.*

(Also reported in 223 N. W. 2d 889.)

The cause was submitted for the plaintiff in error on the brief of *Shannon D. Mahoney* of Green Bay, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *Christine M. Wiseman,* assistant attorney general.

HEFFERNAN, J. On November 12, 1971, John Jones was an inmate at the Wisconsin State Reformatory at Green Bay. On that day, there was a general melee in the dining area. It was alleged that, during the course of those events, Jones struck Captain John McLimans, one of the guards, with a chair. In a complaint filed on November 15, 1971, he was charged with causing bodily harm to an officer of a state prison in violation of sec. 946.43 (2), Stats. [1]

After a jury trial, Jones was found guilty of the offense charged. His motion for a new trial was denied on March 15, 1972, and on the same day he was sentenced to the maximum term for the offense—not to exceed ten years—to be served concurrently with the term he was then serving.

---

[1] Sec. 946.43 (2), Stats., provides:

"946.43 **Assaults by prisoners.** Any prisoner confined to a state prison or to any other institution by virtue of a transfer from a state prison who intentionally does any of the following may be imprisoned not more than 10 years: . . .

"(2) Causes bodily harm to an officer, employe, visitor or another inmate of such prison or institution without his consent."

In the proceedings before this court, Jones claims that he was denied the constitutional right to a fair trial because the trial judge refused to grant his motion for a change of venue and that, because of community prejudice, the trial which ensued was not a fair one. He also argues that the evidence was insufficient to prove guilt beyond a reasonable doubt.

We conclude that the trial judge properly exercised his discretion in denying the motion for the change of venue, that there was no evidence of prejudice, the trial was fair, and the evidence produced by the state was sufficient to support the jury's finding that Jones was guilty beyond a reasonable doubt. The judgment and the order denying a new trial will be affirmed.

John Jones' trial attorney moved for a change of venue on January 18, 1972. In support of his motion, he attached as exhibits nine news stories concerning the disturbance at the reformatory, the investigation of the disturbance, and the charging of Jones and two other inmates. The affidavit alleged that these articles resulted in, or reflected, community prejudice which would preclude the possibility of a fair trial in Brown county.

Jones' attorney also alleged that a radio news commentator stated in the course of his commentary that:

". . . 3 inmates, who are believed to be the instigators of the prison riot which caused one-half million dollars in damages, will be arraigned this morning in Brown County Court, Branch No. 2."

The transcript indicates that, sometime prior to trial, the judge denied the motion but withheld the final decision pending the *voir dire* of the jury. Following the *voir dire,* a hearing on the motion for a change of venue was resumed and the motion denied.

The right to a fair trial free of community prejudice is a constitutional right; and, in the event a trial judge

has abused his discretion in denying a motion for a change of venue, the verdict that follows must be set aside. *State v. Kramer* (1969), 45 Wis. 2d 20, 171 N. W. 2d 919. In *Kramer,* we pointed out that, on review, this court must look to the evidence presented at the hearing on the motion and examine the original documents to determine whether, in the view of such evidence, the trial court abused its discretion. *Kramer, supra,* page 30.

The broad guidelines of *Kramer* were further refined in *McKissick v. State* (1971), 49 Wis. 2d 537, 182 N. W. 2d 282, and *State v. Hebard* (1971), 50 Wis. 2d 408, 184 N. W. 2d 156. In *State v. Hebard,* we itemized nine factors which this court will consider upon a claim that the trial judge abused his discretion in denying a change of venue in a criminal case:

"[1] the inflammatory nature of the publicity concerning the crime; [2] the degree to which adverse publicity permeated the area from which the jury panel would be drawn; [3] the timing and specificity of the publicity; [4] the degree of care exercised; [5] the amount of difficulty encountered in selecting the jury; [6] the extent to which jurors were familiar with the publicity; [7] the defendant's utilization of challenges, both peremptory and for cause, available to him on *voir dire;* [8] the participation of the state in the adverse publicity; and [9] the severity of the offense charged and the nature of the verdict returned." (Pp. 426, 427)

We consider each of these factors in reviewing the decision of the trial judge. Our perusal of the news stories submitted as a part of the record shows that they were straightforward, uneditorialized, informational articles designed for the purpose of informing the public; and even though articles of that nature might be read by a juror, they are not of the type that would create prejudice. *Gibson v. State* (1972), 55 Wis. 2d 110, 120, 197 N. W. 2d 813.

Sec. 270.17, Stats.,[2] correctly codifies a constitutionally acceptable standard in respect to pretrial news stories. Each of the nine articles, clipped from seven different newspapers, have been examined by this court; and although, in some instances, the words, "assault," "riot," and "beating," were used, the general tenor of each of these stories is informational only. Contrary to the claim of Jones' trial attorney in his affidavit, none of these news articles identified Jones as an "instigator" of the disturbance.

One of the news articles, in referring to the charge against Jones, stated that he had been sentenced to the reformatory for two years on a charge of homicide by reckless conduct. We cannot believe that any member of the public or of the potential jury panel would be prejudiced by the revelation that an inmate of a state prison had theretofore been found guilty of a crime. The newspapers identified Jones, not as a criminal who had committed a deliberate and heinous offense, but rather as a person who had inadvertently committed a crime, not by actual intent, but by recklessness. In the context of a prison setting, the revelation of the facts of Jones' prior sentence was hardly prejudicial.

Counsel's affidavit alleges that a radio news commentator referred to Jones as an instigator of the disturbance. We have no information in respect to the context of that remark, the station carrying the broadcast, or the extent to which it might have been heard by listeners within the area from which the jury was drawn. While we take judicial notice that the *Green Bay Press Gazette* is a principal news source in Brown county and

---

[2] Sec. 270.17, Stats., provides:

"270.17 **Newspaper information does not disqualify.** It shall be no cause of challenge to a juror that he may have obtained information of the matters at issue through newspapers or public journals, if he shall have received no bias or prejudice thereby . . . ."

is widely circulated in that area, there is no proof of such permeation. In any event, the stories were not prejudicial.

All of the stories were published immediately after the disturbance at the state reformatory. The trial was not held until four months later. We commented in *Tucker v. State* (1973), 56 Wis. 2d 728, 735, 202 N. W. 2d 897, that even in the event the initial publication of news stories was of a prejudicial nature, the passage of time between the publication of a prejudicial statement and the time the jury is drawn is a proper factor to consider.

The newspaper clippings do not evidence any negligence or careless coverage. Sources of information were identified. The stories point out that large numbers of inmates wanted no part and took no part in the disturbance. The accuracy of the news stories is unchallenged.

The jury was drawn without difficulty. Only 21 jurors were examined, and the jury was selected by 10:40 a. m. on the first morning of trial. No record was kept of the *voir dire*. While we have stated that the ease in selecting a jury is not highly probative of whether community prejudice exists, this court recognizes that when a jury is drawn with little difficulty, this fact would tend to indicate little or no prejudice against the defendant.

Because the defense counsel at trial failed to have a record made of the *voir dire*, the record is silent in respect to the jury's actual knowledge of pretrial publicity.

The record does not show whether the defendant had any occasion to exercise any challenge for cause. Because of the defendant's failure to make a record of the process of jury selection, we can only conclude from the record that the jury was drawn with great ease and without any evidence of prejudice.

It is not contended that the prosecution in any way participated in, or instigated, any publicity that was adverse to Jones' interest. The record and the exhibits reveal no evidence of pretrial prosecutorial remarks.

The statements made by police officers and officers of the state reformatory are informational only and reflect a factual recitation free of animus.

The offense was tried in the very community where the prison was located. It is alleged that a large number of the citizens of Brown county had friends and relatives who were employed as guards at the state reformatory. It is argued from this that, because of the concern for the welfare of community members employed in the prison, a jury would be motivated to deny a fair trial to one accused of assaulting a prison guard. While there is a certain logic to this argument, the conclusion is completely unsupported by the record. Prejudice, if any, is not revealed by the evidence. True, there were two or three anonymous letters to the trial judge that indicated that the writers were concerned more with punishment of the defendant than with the determination of his guilt or innocence. Nothing in the record, however, shows that these were the manifestation of the feelings of more than an extremely few aberrant members of the community.

After consideration of the trial judge's ruling, in light of the criteria set forth in *Kramer, McKissick,* and *Hebard, supra,* we conclude that the trial judge correctly exercised his discretion in determining that a fair trial could be held in Brown county. The change of venue was properly denied.

In motions after trial, counsel alleged that two additional elements of prejudice surfaced during the course of the trial. The allegation is made that, because Jones was black, he did not receive a fair trial because there were no black persons on the jury panel. The assertion is made and not contradicted that there were no black persons on the panel, and accordingly we conclude that the assertion is true. That in itself, however, is not ipso facto evidence of prejudice. We take judicial notice of the fact that only an extremely small percentage of the in-

habitants of the jury district are black persons.[3] The record failed to show whether there were any black persons on the panel. In the event the method used for jury selection was not of a nature calculated to secure the representation of minority groups on a fair basis, a prejudicial situation might well arise. *McKissick v. State* (1971), 49 Wis. 2d 537, 542, 543, 182 N. W. 2d 282. However, the record is silent in this respect, and we cannot presume that the jury selection was made from a constitutionally inappropriate panel. Certainly no challenge was made to the array in advance of trial, and nothing has been cited in the record that would indicate evidence of racial prejudice. On the state of this record, the defendant's contention is without merit.

It was also argued on the motion for a new trial that a fair trial could not be held because of the large number of uniformed law officers present in the courtroom at all times. The trial judge considered this in his denial of the motion for a new trial. The record shows that all the witnesses were involved in the administration of the prison. The prosecution's witnesses were officers of the state. The defendant called eight inmates of the prison as his witnesses. They of necessity were accompanied by guards. We believe that the situation was such that a trial could not have been held without the presence of these officers. Under such circumstances, prejudice might result. Nothing, however, in the conduct of any of the state personnel has been cited to us as being prejudicial in nature.

Moreover, the trial judge repeatedly admonished the jury that they were to draw no inferences in respect to the credibility of the witnesses or the guilt of the defendant because of the presence of prison guards. We believe that the trial judge properly cautioned the jury

[3] 1973 *Wisconsin Blue Book:* 1970 population of Brown county —158,244; Black population—368, or approximately .2 percent.

in this respect. After the trial was completed, he concluded that the defendant was not prejudiced as a consequence of the presence of the law officers.

The evidence was highly probative of guilt. The jury verdict was one which would be reached by an unprejudiced jury on the basis of the credible evidence which it heard. The result was not inappropriate to the facts presented in the course of trial.

The defendant, however, argues on this appeal that the verdict was contrary to the evidence. We do not agree. The evidence was in sharp conflict. Jones testified that he did not strike Captain McLimans. He testified, rather, that he was struck. There was evidence that, shortly after the disturbance in the dining hall, Jones received medical attention. In addition, several inmates testified that they saw Jones struck with a chair when the disturbance broke out. One of them testified that Jones was substantially unconscious and, at the very beginning of the melee, he had to be helped away from the scene of the fighting. On the other hand, several of the guards testified that they saw Jones strike McLimans with a chair several times. These guards were in a position from which they could reasonably determine the identity of McLimans' attacker. They testified that Jones, who was a kitchen attendant, was wearing a white uniform and that he was the only person so garbed in the immediate vicinity of McLimans at the time of the attack.

The testimony was contradictory. The jury could have believed the testimony of Jones' witnesses; it could have believed the testimony of the guards who said they saw Jones make the attack. The question was one for the jury. In the face of contradictory evidence, none of which is incredible as a matter of law, the jury must resolve the discrepancy. *Garrella v. State* (1973), 61 Wis. 2d 351, 212 N. W. 2d 101; *Bautista v. State* (1971), 53 Wis. 2d 218, 191 N. W. 2d 725; *Gauthier v. State* (1965),

28 Wis. 2d 412, 137 N. W. 2d 101. We stated in *Garrella, supra,* pages 352, 353:

" '[It is] not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true.' "

The testimony of the guards was of a nature and quality that the jury could believe. That testimony, if believed, establishes beyond a reasonable doubt that Jones was one of the inmates attacking Captain McLimans.

It is also argued that the judgment should be reversed because of prosecutorial misconduct. Counsel argues that, by an improper question during the course of the cross-examination of Jones, the district attorney attempted to show that at one time Jones was willing to confess. During the course of investigation shortly after the disturbance at the prison, Jones was interviewed by James Frisque, an investigator for the sheriff's department. Referring to an interview with Frisque, the prosecutor, during cross-examination, asked Jones, "At that time didn't you tell him that if you would get a lawyer that you wanted a speedy trial, and you would make a full confession to your part in the riot?" The record at trial shows defense counsel made no objection to the reference to the promise to make a confession. An objection to the question was made, but only to the use of the word, "riot."

Following the objection, the trial judge ruled that the word, "riot," be stricken from the question. The prosecutor then repeated the same question substituting the word, "disturbance," for the word, "riot." There was no objection to that question. On redirect examination, the defense attorney, rather than avoiding the question of whether a confession had ever been promised by Jones, took up the same course of inquiry and asked his client:

"*Q.* Did you at any time indicate that you were going to in any manner whatsoever make some kind of a confession regarding what this trial is all about today?
"*A.* No.
"*Q.* You deny that?
"*A.* I do."

Any objection to the question was initially waived when defense counsel failed to object to that portion of the question. Moreover, when he pursued the same line of questioning on redirect examination, he sought to clarify for the jury what he now claims should never have been put before it. As we held in *State v. Hunt* (1972), 53 Wis. 2d 734, 747, 193 N. W. 2d 858, a follow-up question on redirect after failing to object to the cross-examination constitutes a strategic waiver of what otherwise might be an objectionable question.

Jones' counsel on appeal also contends that the prosecutor committed prejudicial error by asking Frisque about Jones' promise to confess. However, our perusal of the testimony of Frisque reveals no question concerning the interview at which Jones allegedly promised to confess his involvement. We see no evidence of prejudicial prosecutorial error.

The defendant argues that a new trial ought to be ordered in the interests of justice, in light of the effect of the pretrial publicity, the presence of security officers at the trial, and the implications of racial prejudice arising in an all-white court. We conclude that none of these allegations, either individually or collectively, lead us to conclude that justice was not done in the original trial. In *Kramer, supra,* page 38, this court discussed its power under sec. 251.09, Stats.,[4] to order a new trial in the

---

[4] Sec. 251.09, Stats., provides:

"251.09 **Discretionary reversal.** In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may

interests of justice. Quoting from *Commodore v. State* (1967), 33 Wis. 2d 373, 383, 147 N. W. 2d 283, this court stated:

" 'This power is exercised with "some reluctance and with great caution" and only in the event of a probable miscarriage of justice. *Ferry v. State* (1954), 266 Wis. 508, 511, 63 N. W. (2d) 741. Such grave doubt must exist regarding defendant's guilt to induce the belief that justice has miscarried. *State v. Fricke* (1934), 215 Wis. 661, 667, 255 N. W. 724. In *Lock v. State* (1966), 31 Wis. (2d) 110, 118, 142 N. W. (2d) 183, we stated:
" ' ' "In order for this court to exercise its discretion and for such a probability [of a miscarriage of justice] to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial." ' ' " (brackets in *Kramer*)

Jones received the maximum sentence permitted by the legislature. He was sentenced for a term not to exceed ten years, to run concurrently with the term he was then serving. He argues that, since he was only one of two or three hundred inmates in the dining hall at the time of the disturbance and because there was no evidence of premeditation on his part, he ought not to have received the sentence imposed.

In *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512, this court pointed out that the trial judge's function in sentencing was a discretionary one and that a sentence imposed would be reversed or modified only when the record clearly revealed an abuse of discretion.

---

in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

We defined the judicial discretion in sentencing as being circumscribed by the facts of record. A sentence should be imposed only after the trial judge has reviewed the facts and considered a possible sentence in terms of the gravity of the offense, the necessity for the custody of the defendant, the protection of the public, and the rehabilitative needs of the defendant.

These facts were considered by the trial judge. He gave particular emphasis to the deterrent effect of a sentence for misconduct in a prison environment. He said:

"In a prison society where the guards have to protect not only the order and the running of the prison from disruption but actually have to protect the inmates from their own abuses or their own excesses, I have to give additional regard to deterrence in the particular case . . . Captain McLimans was seriously injured."

He also considered the principles of the *American Bar Association Standards* on sentencing. The trial judge also discussed the rehabilitative opportunity that the sentence afforded the defendant. He emphasized that, under the Wisconsin law, the sentence is an indeterminate one and the actual period of incarceration would depend upon the defendant's attitude of cooperation with the prison authorities.

We are satisfied that the trial judge weighed the facts of the instant case and properly exercised his discretion in imposing sentence.

A review of the entire record indicates that the trial judge did not abuse his discretion in denying the change of venue. There is no evidence that the trial was unfair or conducted in a prejudiced atmosphere. No prejudicial errors were committed by the trial judge or by the prosecutor. The interests of justice would not be served by remanding the case for a new trial.

*By the Court.*—Judgment and order affirmed.