State of Wisconsin, Plaintiff-Respondent,

v.

Joel L. Ritchie, Defendant-Appellant.†

Court of Appeals

*No. 99–1902–CR. Submitted on briefs April 10, 2000.—Decided May 31, 2000.*

2000 WI App 136

(Also reported in 614 N.W.2d 837.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven G. Bauer* of *Law Offices of Steven G. Bauer* of Fond du Lac.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, J.    Joel L. Ritchie appeals from a judgment of conviction for first-degree intentional homicide pursuant to WIS. STAT. § 940.01 (1995–96). The judgment followed a jury verdict finding Ritchie guilty of the murder of Terri Schreiber. Ritchie raises two issues on appeal. First, he argues that the criminal complaint failed to state probable cause sufficient to support the warrant for his arrest. As a result, he contends that the trial court should have suppressed evidence obtained incident to his arrest on the warrant. Second, Ritchie argues that the trial court erred by rejecting his motion for a change of venue. We reject Ritchie's arguments. We affirm the judgment of

conviction. We will recite the relevant facts as we discuss each issue.

## 1. *Arrest Warrant*

### A. *The Criminal Complaint and Ritchie's Arrest*

¶ 2.   On April 12, 1997, the circuit court, acting as a magistrate, issued a warrant for Ritchie's arrest. The warrant was based upon the allegations of a sworn criminal complaint filed with the court the previous day. The complaint charged Ritchie with the murder of Schreiber. In relevant part, the complaint alleged that Ritchie's grandparents contacted the City of Manitowoc Police Department on April 10, 1997, expressing concern about Ritchie. Ruth Ward, Ritchie's grandmother, reported that she had gone to Ritchie's apartment earlier that day and observed a broken window in an interior kitchen door. She proceeded to the living room where she discovered a body, later identified as Schreiber. Further investigation revealed that the body had approximately fourteen puncture wounds.

¶ 3.   Ralph Shipman, a friend of Ritchie's, reported that he had been at Ritchie's residence on April 4, 1997, and observed the broken window in the kitchen door. Shipman further reported that Ritchie had told him that he had locked himself out of his apartment and that he had to break the window in order to gain entrance. Mary Jo Michalek, who knew both Ritchie and Schreiber, stated that the two were involved in a "relationship." Joel Klusmeyer, a tenant who lived downstairs from Ritchie's apartment, reported that he last saw Schreiber on Sunday evening, April 6, 1997, at approximately 10:00 p.m. Mary Klein, a neighbor of Ritchie's, reported that she last saw

Ritchie at his apartment on April 8. Jeff Jenswold, Director of the Manitowoc County Counseling Center, reported that Ritchie did not keep a scheduled appointment at the center on April 8.

¶ 4. James Shaw, a process server, reported that he had unsuccessfully attempted to serve eviction papers on Ritchie at the apartment on April 7, 8, 9 and 10. On each of these days, Shaw saw a vehicle parked in the same area on the street outside Ritchie's residence. The investigation established that the vehicle was registered to Schreiber.

¶ 5. Schreiber's parents reported that Ritchie and Schreiber had been at their home on April 6. Mr. Schreiber reported that at one point during this visit, Ritchie, without explanation, took a knife and stuck it into the kitchen table. Larry Maxey, an acquaintance of Ritchie, reported that he had a conversation with Ritchie during the "last few weeks" in which Ritchie said that he wanted to kill someone.

¶ 6. The complaint concluded by stating that all of the persons who provided this information were "believed because they are providing information based upon their personal observations and experience."

¶ 7. Based upon these allegations, the magistrate issued a warrant for Ritchie's arrest, and he was later arrested in the state of Washington. Incident to his arrest, Ritchie gave an incriminating statement to the arresting officer and certain items were seized from his person. Ritchie moved to suppress this evidence, contending that the criminal complaint failed to recite probable cause sufficient to support the issuance of the arrest warrant. The trial court denied the motion.

## B. Standard of Review

¶ 8. The test for probable cause is well known and has often been stated. "Probable cause refers to the quantum of evidence which would lead a reasonable police officer to believe that defendant committed a crime. There must be more than a possibility or suspicion that defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." *State v. Mitchell*, 167 Wis. 2d 672, 681–82, 482 N.W.2d 364 (1992). In the context of an arrest warrant, "probable cause eschews technicality and legalisms in favor of a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." *State v. Kiper*, 193 Wis. 2d 69, 83, 532 N.W.2d 698 (1995) (citations omitted).

¶ 9. Ordinarily, the issue of whether a criminal complaint states probable cause presents a question of law, which we review independently on appeal. *See State v. Fawcett*, 145 Wis. 2d 244, 250, 426 N.W.2d 91 (Ct. App. 1988). We are not required to give deference to the circuit court's determination on this question because both we and the circuit court review the same documentation and "both courts are in the same position when conducting their reviews." *See State v. Johnson*, 231 Wis. 2d 58, 67, 604 N.W.2d 902 (Ct. App.), *review denied*, 231 Wis. 2d 374, 607 N.W.2d 291 (Wis. Dec. 20, 1999) (No. 98–2881–CR). This nondeferential standard of review is also premised on the notion that probable cause represents a constitutional standard, and we apply that standard to the undisputed facts. *See State v. Riddle*, 192 Wis. 2d 470, 475, 531 N.W.2d 408 (Ct. App. 1995).

¶ 10. Despite the abundance of case law addressing our standard of review for a probable cause determination, no reported Wisconsin case has addressed this question where, as here, an arrest warrant is issued based upon the allegations recited in a criminal complaint. In light of this vacuum, the State points us to the analogous case law in a search warrant setting where the courts have adopted a deferential standard of review. "In reviewing whether there was probable cause for the issuance of a search warrant, we accord great deference to the determination made by the warrant-issuing magistrate." *State v. Ward*, 2000 WI 3, ¶ 21, 231 Wis. 2d 723, 604 N.W.2d 517. This deferential standard of review is premised upon the "well-established preference under the Fourth Amendment that searches be conducted pursuant to a warrant." *Id.* at ¶ 22. When the judicial officer's determination of probable cause is "doubtful or marginal," we examine that determination in light of the strong preference that searches be conducted pursuant to a warrant. *See id.* at ¶ 24.

¶ 11. Based on this analogous law, the State asks that we adopt the same deferential standard of review when we review a judicial officer's determination of probable cause when issuing an arrest warrant. We agree with the State. We appreciate that an arrest warrant and a search warrant protect distinct interests under the Fourth Amendment and, as a result, the test for issuance of those warrants is stated in differing language. *See Kiper*, 193 Wis. 2d at 82–83. But, in our judgment, this does not mandate a different standard of appellate review.

¶ 12. While not speaking directly to the appellate standard of review, Professor LaFave, the noted crimi-

nal law commentator, has observed that the law governing arrest and search warrants overlaps:

> The requirement of the Fourth Amendment that no warrant shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the person or things to be seized, *applies to arrest warrants as well as search warrants, and thus much of what [is] said . . . with respect to the issuance of search warrants applies by analogy to arrest warrants.*

3 Wayne R. LaFave, Search and Seizure § 5.1(g), at 50 (3d ed. 1996) (emphasis added).

■

¶ 13.   We see no sound reason why the standard of review in these closely related situations should be different. Surely the personal liberty interests of a person in an arrest setting are as compelling as the privacy interests of the person in his or her property in a search setting. If the law prefers and encourages the intervening judgment of a neutral magistrate in a search warrant setting in order to avoid a hurried decision by a police officer to discover evidence, *see State v. Higginbotham*, 162 Wis. 2d 978, 990, 471 N.W.2d 24 (1991), it follows that the same preference and encouragement should exist in an arrest warrant setting. We adopt the deferential standard of review urged by the State.

## C.   *Ritchie's Probable Cause Challenge*

¶ 14.   Ritchie argues that the criminal complaint failed to recite probable cause sufficient to support the issuance of the arrest warrant. He contends that the complaint fails to demonstrate the reliability of the various people who provided information to the police.

He further contends that the complaint fails to state when the murder was committed and shows, at best, a "hunch" that he committed the crime.

¶ 15.　We begin with Ritchie's challenge to the reliability of the persons who provided information to the police.[1] Although the complaint does not expressly designate these persons as "citizen informants," it is clear from the complaint that they fall into that category. The complaint recites that the information provided by these persons stemmed from "their personal observations and experience." Nothing in the criminal complaint remotely suggests that these persons were suspects in this or any other crime or that they provided their information in exchange for any concessions or preferential treatment. In short, these were ordinary persons who answered questions and provided information in response to a police investigation of a crime.

¶ 16.　Next, we address the sufficiency of the complaint itself. It is true that the complaint does not recite direct evidence of Ritchie's involvement in Schreiber's murder. Instead, the complaint is built upon circumstantial evidence. Circumstantial evidence can sometimes be, and often is, stronger and more satisfactory than direct evidence. *See State v. Johnson*, 11 Wis. 2d 130, 135, 104 N.W.2d 379 (1960).[2] A complaint can

---

[1] Ritchie limits this challenge to Mary Jo Michalek, who reported that he and Schreiber were involved in a relationship and to James Shaw, the process server. However, we address this issue as to all persons who provided information to the police because they all fall into the same category of citizen informants.

[2] Or, as Henry D. Thoreau said, "Some circumstantial evidence is very strong, as when you find a trout in the milk." M.

672

be based upon circumstantial evidence. *See State v. Bembenek*, 111 Wis. 2d 617, 628, 331 N.W.2d 616 (Ct. App. 1983).

¶ 17.   The circumstantial case constructed in the criminal complaint consisted of the following. Ritchie and Schreiber were involved in a relationship. Schreiber was found murdered in Ritchie's apartment on April 10. The apparent weapon was an instrument which could inflict puncture wounds. Ritchie had brandished a knife four days earlier during his visit with Schreiber's parents. This was the last day Schreiber was seen alive. Ritchie had earlier expressed his intent to kill someone. Ritchie had apparently disappeared, was in hiding, or had fled because he was last seen on April 8, failed to keep an appointment on that day, and could not be served with eviction papers before and after that date.

■

¶ 18.   These facts, viewed in their totality and read from a commonsense standpoint constituted much more than a mere "hunch." To the contrary, they represented a strong circumstantial statement of probable cause that Ritchie had murdered Schreiber.[3] Giving

FRANCES MCNAMARA, 2,000 FAMOUS LEGAL QUOTATIONS 207 (1967) (quoting HENRY D. THOREAU, JOURNAL, November 11, 1850).

[3] As to Ritchie's argument that the complaint failed to recite the time of the murder, we observe that "the time of commission of a crime need not be alleged with precision where it is not a material element of the offense charged." *Thomas v. State*, 92 Wis. 2d 372, 387, 284 N.W.2d 917 (1979). However, the defendant's due process right to be fairly informed of the charge tempers this rule. *See id.* at 387–88. Here, the complaint raises no due process concerns and it does not appear that Ritchie is even raising this argument. In any event, the complaint establishes that Schreiber was last seen alive on April 6. Her body

the appropriate deference to the magistrate's determination of probable cause, we uphold that ruling. As a result, the trial court did not err in rejecting Ritchie's motion to suppress the evidence obtained incident to his arrest.

## 2. *Change of Venue*

¶ 19. Sixteen months before the jury trial began, Ritchie filed a motion for change of venue based upon pretrial publicity. Ritchie appended exhibits to his motion, which included newspaper articles and transcripts of radio and television broadcasts about the case. Later, Ritchie supplemented his motion with further exhibits of additional media coverage. With the exception of one publication which occurred on July 17, 1997, all of these additional publications occurred between April 11 and May 28 of 1997.

¶ 20. Far in advance of the trial, the trial court addressed Ritchie's change of venue motion on September 15, 1997. The court did not make a final ruling at that time. Instead, the court stated that it would continue to monitor the media coverage and reserved the option of impaneling a jury from another county.

¶ 21. The trial court next addressed the issue at a hearing on January 20, 1998, still some ten months before the jury trial. Assessing the exhibits submitted by Ritchie, the court said:

> [T]here's not any editorial hypothesizing on this. It seems what coverage there has been has been fairly objective, and furthermore, there has not been

---

was found four days later. The complaint alleges that the crime took place "on or about the 9th day of April, 1997." We hold that this allegation did not prejudice Ritchie in his ability to prepare a defense. *See id.* at 388.

much on this case at all in recent months. So I frankly feel we can possibly find a jury in Manitowoc County that will satisfy both the state and the defense.

Despite the court's assessment of the media coverage, the court again chose not to make a final ruling. Instead, as before, the court stated that it would continue to monitor the issue in light of future developments.

¶ 22. The jury trial commenced on October 26, 1998. At the outset, Ritchie stated that he had no further materials or evidence to present on his change of venue motion. The trial court confirmed its earlier ruling that it saw no need to change venue, but the court again withheld final judgment on the matter pending the selection of the jury. However, the jury selection process proved uneventful. Twenty-one of the prospective jurors had heard or read something about the case. All but one said that they would not be affected by this information. Ritchie's motion to excuse this one prospective juror was granted and he did not challenge any of the remaining prospective jurors for cause.

¶ 23. A motion for a change of venue is addressed to the trial court's discretion. *See Hoppe v. State*, 74 Wis. 2d 107, 110, 246 N.W.2d 122 (1976). The relevant factors are: (1) the inflammatory nature of the publicity; (2) the timing and specificity of the publicity; (3) the degree of care exercised, and the amount of difficulty encountered, in selecting the jury; (4) the extent to which the prospective jurors were familiar with the publicity; (5) the defendant's utilization of peremptory and for cause challenges of prospective jurors; (6) the State's participation in the adverse publicity; (7) the severity of the offense charged; and (8) the nature of

the verdict returned. *See State v. Albrecht*, 184 Wis. 2d 287, 306, 516 N.W.2d 776 (Ct. App. 1994).

¶ 24. Here, only the last two factors favor Ritchie's change of venue argument. He was charged with the most serious of criminal offenses and the jury found him guilty. However, we deem those the least compelling factors.

¶ 25. We turn to the remaining factors. As the trial court correctly observed, the publications were informational. Moreover, most of the information, which Ritchie contends was inflammatory, was made known to the jury during the trial.[4]

¶ 26. In addition, all of the pretrial publicity occurred many months in advance of the trial in this case. When the trial court first addressed Ritchie's change of venue motion, the court prudently deferred making a final decision. Instead, the court continued to monitor the media coverage of the case over the ensuing months as the trial date drew nearer. However, other than an innocuous radio broadcast on the day of trial reporting that jury selection had begun, the media coverage of the case had ceased more than a year earlier. A "cooling-off" period such as this contributes to an environment conducive to a fair trial. *See Hoppe*, 74 Wis. 2d at 114; *State v. Messelt*, 178 Wis. 2d 320, 330, 504 N.W.2d 362 (Ct. App. 1993), *aff'd*, 185 Wis. 2d 254,

---

[4] This included Ritchie's substance abuse problems, his flight from Wisconsin, the discovery of a knife on his person when he was arrested and his statement to the arresting officer that he could not remember stabbing the victim. The only matters not covered at the trial were the media reports of Ritchie's prior disorderly conduct charge and his attorney's statement questioning Ritchie's competency to stand trial. We do not deem either of these matters so prejudicial as to warrant a change of venue.

518 N.W.2d 232 (1994); *Turner v. State*, 76 Wis. 2d 1, 28, 250 N.W.2d 706 (1977); *Jones v. State*, 66 Wis. 2d 105, 111, 223 N.W.2d 889 (1974); *Tucker v. State*, 56 Wis. 2d 728, 735, 202 N.W.2d 897 (1973).

¶ 27. Moreover, as we have already detailed, the jury was easily selected in this case. The trial court and the attorneys took great care in examining the prospective jurors, particularly from the standpoint of any knowledge gained by pretrial publicity. Of the twenty-one prospective jurors who had heard about the case, only one expressed an opinion and that prospective juror was excused for cause at Ritchie's behest. Ritchie did not register any other challenges for cause based on this issue. The balance of the prospective jurors all affirmed that they had not been influenced by their knowledge of the case, and the jurors ultimately selected, including the alternates, stated that they held no opinions, bias or prejudice about the case.

¶ 28. Finally, we observe that the State did not solicit or participate in the pretrial publicity.

¶ 29. After considering all of the relevant factors under *Albrecht*, we hold that the trial court did not misuse its discretion by rejecting Ritchie's motion for a change of venue.

### 3. *Conclusion*

¶ 30. We affirm the trial court's ruling that the criminal complaint stated probable cause sufficient to support the magistrate's issuance of the warrant for Ritchie's arrest. We therefore hold that the court did not err in rejecting Ritchie's motion to suppress. We further hold that the court did not err by rejecting Ritchie's change of venue motion. We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.