# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP2196-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Steven T. Delap, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 375 Wis. 2d 799, 899 N.W.2d 738
(2017 – Unpublished)

| | |
|---|---|
| OPINION FILED: | June 6, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 12, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dodge |
|   JUDGE: | Steven G. Bauer |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | GABLEMAN, J., concurs, joined by KELLY, J. (opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs and an oral argument by *Michael J. Herbert*, Madison.

For the plaintiff-respondent there was a brief and an oral argument by *Jennifer R. McNamee*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP2196-CR
(L.C. No. 2015CM408)

STATE OF WISCONSIN                  :          IN SUPREME COURT

**State of Wisconsin,**

       **Plaintiff-Respondent,**

  **v.**

**Steven T. Delap,**

       **Defendant-Appellant-Petitioner.**

**FILED**

**JUN 6, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals affirming a judgment of conviction of the Circuit Court for Dodge County, Steven G. Bauer, Judge.[1] Steven Delap, the defendant, was convicted of obstructing an officer in violation of Wis. Stat.

---

[1] State v. Delap, No. 2016AP2196-CR, unpublished slip op. (Wis. Ct. App. Apr. 20, 2017). The case was decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2015-16). All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

§ 946.41(1) and possession of drug paraphernalia in violation of Wis. Stat. § 961.573(1), both as a repeater.

¶2 In the circuit court, the defendant claimed that his arrest was unlawful and that the evidence seized should be suppressed. The defendant argued that law enforcement officers, who had two valid warrants for his arrest, unlawfully attempted to stop him in the driveway of his home, unlawfully pursued him into his home to effectuate his arrest, and unlawfully seized evidence obtained from a search incident to his arrest.

¶3 The defendant claims that the arrest and subsequent search violated his rights under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.

¶4 The circuit court denied the defendant's motion to suppress the evidence. The circuit court concluded that the hot pursuit doctrine permitted the law enforcement officers in the instant case to follow the defendant into his home to effectuate his arrest. Relying on the hot pursuit doctrine, the court of appeals affirmed the circuit court's denial of the defendant's motion to suppress evidence.

¶5 We affirm the decision of the court of appeals, but on grounds different than those relied upon by the circuit court and court of appeals. We conclude that the instant case is

2

governed by Payton v. New York, 445 U.S. 573 (1980), and we need not address the applicability of the hot pursuit doctrine.[2]

¶6    In Payton, the United States Supreme Court declared that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 603.

¶7    In the instant case, law enforcement officers had two valid arrest warrants based on probable cause for the arrest of the defendant. The facts and circumstances known to the officers at the time they located the defendant were sufficient to form probable cause to believe that the individual they saw entering the residence was the defendant and that the defendant lived in the residence into which he fled.

¶8    Thus, applying the teachings of Payton, we conclude that the law enforcement officers in the instant case lawfully entered the defendant's residence to execute the two valid warrants for the defendant's arrest and lawfully seized evidence discovered in the search incident to the defendant's arrest.[3]

---

[2] We note that although the circuit court and court of appeals did not rely on Payton, the parties briefed and argued the application of Payton to the facts of the instant case while in this court.

[3] Because we affirm the decision of the court of appeals under the Supreme Court's decision in Payton, we need not (and do not) address the issue of whether the hot pursuit doctrine permitted the law enforcement officers in the instant case to follow the defendant into his home to effectuate his arrest.

¶9   Accordingly, we affirm the decision of the court of appeals.

I

¶10 The following facts are taken from the testimony elicited at the hearing on the defendant's motion to suppress evidence and from the circuit court's findings based on that testimony.

¶11 On September 6, 2015, Sergeant Michael Willmann and Deputy Dustin Waas of the Dodge County Sheriff's Department arrested the defendant in his home.

¶12 Approximately one month prior to the defendant's arrest, Sergeant Willmann overheard that his colleague, Deputy John Gallenbeck, "conduct[ed] a traffic stop on a vehicle where the driver subsequently fled from the vehicle and went into a wooded area and deputies were unable to locate him." Deputy Gallenbeck had learned from a passenger in the vehicle that the fleeing driver "was Steven Delap [the defendant] and that he was living at 110 Milwaukee Street in Neosho."

¶13 Approximately one week prior to the defendant's arrest, Sergeant Willmann "received a teletype correspondence from the Walworth County Sheriff's Office stating that [the defendant] was involved in a very similar incident . . . where he had fled from a traffic stop in the same type of manner." The teletype indicated that the defendant lived at 110 Milwaukee Street.

¶14 Sergeant Willmann ran the defendant's name through Wisconsin Department of Transportation and National Crime

4

Information Center files which turned up two valid and outstanding warrants for the defendant's arrest: one through Jefferson County and another through the Wisconsin Department of Corrections. Because of the defendant's prior history of fleeing police, Sergeant Willmann requested that Deputy Waas accompany him to arrest the defendant pursuant to the two arrest warrants.

¶15 At about 10:00 p.m. on September 6, 2015, Sergeant Willmann and Deputy Waas went to 110 Milwaukee Street in Neosho to arrest the defendant pursuant to the two outstanding arrest warrants. Sergeant Willmann was in full uniform: green pants, tan shirt, patches, a badge, and a duty belt. The officers parked about a block away from 110 Milwaukee Street out of concern that the defendant "would either run or not answer the door" if they parked closer. They left their vehicles and walked down Milwaukee Street, counting down the numbers on the houses as they went. Sergeant Willman recalled that the last building number he counted was 120 before seeing the final building on the 100 block of Milwaukee Street. That building was a duplex, and based on his counting, Sergeant Willmann believed that one of the two doors at the duplex had to be 110 Milwaukee Street.

¶16 When Sergeant Willmann walked "towards what [he] believed [was] the residence," he saw a man standing next to a car parked on Milwaukee Street and another man walking down the driveway in front of the duplex towards that car. As Sergeant Willmann and Deputy Waas approached, the man who was walking

5

down the driveway turned and looked at the officers before turning around and running towards the back of the duplex. Sergeant Willmann shined his flashlight on the individual and shouted, "Stop, police!" but the man did not stop and instead continued running towards the back of the duplex.

¶17 Sergeant Willmann gave chase. Based upon the man's proximity to 110 Milwaukee Street and his reaction upon seeing the two police officers, Sergeant Willmann believed that the fleeing man was the defendant, Steven Delap.

¶18 When the man got to the rear door of the residence, he went inside and began shutting the door. Sergeant Willmann used his shoulder to "keep the door from latching completely shut." Sergeant Willmann and the man pushed back and forth on the door until Deputy Waas joined Sergeant Willmann. The two police officers together pushed the door open.

¶19 At some point, one of the officers pulled out his Taser, "got [the defendant] to the ground, [and] got [the defendant] in cuffs." After the arrest, the fleeing individual was identified as Steven Delap, the defendant.

¶20 A subsequent search incident to the defendant's arrest revealed three syringes and a silver tube used for smoking crack cocaine in the defendant's right cargo pocket.

¶21 The defendant was charged with one count of obstructing an officer in violation of Wis. Stat. § 946.41(1) and possession of drug paraphernalia in violation of Wis. Stat. § 961.573(1), both as a repeater.

¶22 The defendant moved to suppress the evidence obtained as a result of the search incident to his arrest. The defendant argued that the officers' attempt to stop him while he was still in his driveway was unlawful, and further, that it was unlawful for the officers to pursue him into his home in order to arrest him.

¶23 At the suppression hearing, the circuit court seemed inclined to rule that the officers lawfully entered the defendant's home under the rationale announced in Payton v. New York, 445 U.S. 573 (1980). The circuit court stated that "[t]he bottom line is there's a legitimate arrest warrant for you and the police officer[s], through their investigation, had reason to believe and probable cause that you lived there, okay. That's all I needed, probable cause that you lived there and they had the arrest warrant. That's enough."

¶24 Nevertheless, the circuit court's written order denied the defendant's motion on the basis that the officers' entry into the home was permitted under the hot pursuit doctrine. The defendant pleaded no contest to the charges against him and appealed. The court of appeals affirmed the conviction, relying on the hot pursuit doctrine.

II

¶25 We begin by setting forth the applicable standard of review.

¶26 "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." State v. Robinson, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786

N.W.2d 463; see also State v. Iverson, 2015 WI 101, ¶17, 365 Wis. 2d 302, 871 N.W.2d 661 (quoting Robinson).

¶27 "When presented with a question of constitutional fact, this court engages in a two-step inquiry. First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." Robinson, 327 Wis. 2d 302, ¶22 (citations omitted); see also Iverson, 365 Wis. 2d 302, ¶18; State v. Hogan, 2015 WI 76, ¶32, 364 Wis. 2d 167, 868 N.W.2d 124.

### III

¶28 For purposes of this review, no dispute exists about the historical facts. No party argues (and we do not conclude) that any of the circuit court's findings of fact based on the testimony are clearly erroneous. Therefore, we apply the relevant constitutional principles to the historical facts.

¶29 The relevant constitutional principles are set forth in Payton v. New York, 445 U.S. 573 (1980).

¶30 The United States Supreme Court declared in Payton that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton, 445 U.S. at 603.

¶31 The Supreme Court has further explained Payton, stating that the Payton Court "recognized that an arrest warrant

alone was sufficient to authorize the entry into a person's home to effect his arrest. . . . Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." Steagald v. United States, 451 U.S. 204, 214 n.7 (1981).

¶32  Under Payton, police may enter a residence pursuant to an arrest warrant if two factors are present:  "(1) the facts and circumstances present the police with a reasonable belief that the subject of the arrest warrant resides in the home; and (2) the facts and circumstances present the police with a reasonable belief that the subject of the arrest warrant is present in the home at the time entry is effected."  State v. Blanco, 2000 WI App 119, ¶16, 237 Wis. 2d 395, 614 N.W.2d 512.

¶33  The federal circuit courts are divided regarding what Payton meant by a "reasonable belief."  See United States v. Hill, 649 F.3d 258, 262-63 (4th Cir. 2011) (noting that some circuits have equated "reasonable belief" with "probable cause" while others have concluded that "reasonable belief" means something less stringent than "probable cause").

¶34  We need not (and do not) decide today whether "reasonable belief" means "probable cause" or something less stringent because, in the instant case, the officers had

probable cause to believe that the defendant resided in the duplex into which he fled.[4]

¶35 We have explained that "probable cause eschews technicality and legalisms in favor of a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." State v. Kiper, 193 Wis. 2d 69, 83, 532 N.W.2d 698 (1995) (internal quotation marks and quoted source omitted). For probable cause to exist, "[t]he quantum of evidence must constitute 'more than a possibility or suspicion that defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not. The information which constitutes probable cause is measured by the facts of the particular case.'" Id. at 82 (quoting State v. Mitchell, 167 Wis. 2d 672, 681-82, 482 N.W.2d 364 (1992)).

¶36 The first factor, whether the police had probable cause to believe that the defendant resided in the home, is at issue in the instant case.[5] The defendant argues that the police officers in the instant case did not have probable cause to

---

[4] Moreover, this issue was not briefed or argued by the parties in the instant case. Because the resolution of this issue is unnecessary to the resolution of the instant case, we leave for another day the meaning of Payton's "reasonable belief" language. See Jamerson v. Dep't of Children & Families, 2013 WI 7, ¶57, 345 Wis. 2d 205, 824 N.W.2d 822; Pool v. City of Sheboygan, 2007 WI 38, ¶19, 300 Wis. 2d 74, 729 N.W.2d 415.

[5] The second factor is not at issue. No one disputes that the police had probable cause to believe that the defendant was present in the dwelling at the time of the officers' entry.

believe that he was the subject of the arrest warrants (i.e., that the fleeing man was Steven Delap) or that he resided in the dwelling into which he fled.  We are not persuaded by the defendant's arguments.

¶37 The following facts known to the police officers support a finding of probable cause to believe that the fleeing individual was Steven Delap and that the individual resided in the dwelling into which he fled:

- Steven Delap had two outstanding warrants for his arrest:  one from Jefferson County and one from the Wisconsin Department of Corrections.

- Steven Delap had a prior history of fleeing from police officers.

- Approximately one month prior to the defendant's arrest, Sergeant Willmann overheard that Steven Delap had fled a traffic stop conducted by one of his colleagues, and that a passenger in the vehicle said that Steven Delap lived at 110 Milwaukee Street in Neosho.

- Approximately one week prior to the defendant's arrest, Sergeant Willmann received a teletype correspondence from the Walworth County Sheriff's Office stating that Steven Delap was again involved in fleeing a traffic stop.  The teletype indicated that Steven Delap lived at 110 Milwaukee Street.

- As he and Deputy Waas walked down Milwaukee Street, Sergeant Willmann counted down the numbers on the

houses. When he reached number 120, there was only one other building on the 100 block of Milwaukee Street: a duplex that Sergeant Willmann deduced must include 110 Milwaukee Street.

- As Sergeant Willmann and Deputy Waas approached the duplex, a man who was walking down the driveway noticed the officers, turned around, and began running towards the back of the duplex. Sergeant Willmann was in full uniform when the man noticed the officers and fled. Sergeant Willmann shined his flashlight on the man and shouted, "Stop, police!" but the man continued running towards the back of the duplex.

¶38 Taken together, the facts and circumstances presented to Sergeant Willmann and Deputy Waas establish probable cause to believe that the man in the driveway of 110 Milwaukee Street who turned and ran after noticing the police officers was Steven Delap, the subject of the arrest warrants who had a prior history of fleeing police and who was believed to reside at 110 Milwaukee Street.

¶39 The defendant offers two other arguments, both of which are undeveloped and perplexing.

¶40 The defendant contends, without explanation, that the officers did not know that the outstanding arrest warrants were supported by probable cause as determined by a neutral magistrate. Arrest warrants must be supported by probable

12

cause.[6] The language of Payton requires only a valid arrest warrant, a reasonable belief that the subject of the warrant resides in a particular dwelling, and a reasonable belief that the subject of the warrant will be present in the dwelling at the time of entry. Payton, 445 U.S. at 603. Payton does not require the specific arresting officers to also have personal knowledge regarding the issuance of the arrest warrant. The defendant does not argue or contend that the two warrants issued for his arrest in the instant case lacked probable cause, only that Sergeant Willmann and Deputy Waas did not have personal knowledge regarding the issuance of the two warrants. Accordingly, we reject the defendant's argument.

¶41 The defendant also asserts that even if the officers' entry into his home was permissible under Payton, his arrest was nonetheless unreasonable because of the officers' use of force and display of weapons. The defendant fails to explain how the police officers' use of force in the instant case overrides the officers' authority to enter the home to execute the two valid

---

[6] State v. Ritchie, 2000 WI App 136, ¶12, 237 Wis. 2d 664, 614 N.W.2d 837 (quoting Wayne R. LaFave, Search and Seizure § 5.1(g), at 50 (3d ed. 1996)):

> The requirement of the Fourth Amendment that no warrant shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the person or things to be seized, applies to arrest warrants as well as search warrants, and thus much of what [is] said . . . with respect to the issuance of search warrants applies by analogy to arrest warrants.

13

outstanding arrest warrants or how the use of force in the instant case was unreasonable.

¶42 Applying <u>Payton</u> to the undisputed facts, we conclude that the police officers' entry into the defendant's home to execute two valid warrants for the defendant's arrest was permissible. We therefore affirm the decision of the court of appeals affirming the defendant's judgment of conviction.

*By the Court.*—The decision of the court of appeals is affirmed.

¶43 MICHAEL J. GABLEMAN, J. *(Concurring).* I agree with the majority that the entry into Delap's residence was lawful pursuant to Payton v. New York, 445 U.S. 573 (1980), and, consequently, his conviction should be affirmed.[1] However, I would go further and also answer the question of whether the officers' entry into Delap's residence was lawful pursuant to the hot pursuit doctrine. See, e.g., State v. Washington, 2018 WI 3, ¶¶61-68, 379 Wis. 2d 58, 905 N.W.2d 380 (Gableman, J., joined by R.G. Bradley and Kelly, JJ, concurring) ("I would go further and hold that Washington forfeited his right to be present at trial."); Leavitt v. Beverly Enters., 2010 WI 71, ¶¶59-62, 326 Wis. 2d 421, 784 N.W.2d 683 (Ziegler, J., concurring) ("I write separately because I would go further and decide that an order compelling arbitration is not appealable as a matter of right.").

¶44 Though appellate courts should generally decide cases on the narrowest possible grounds, State v. Toliver, 2014 WI 85, ¶12, 356 Wis. 2d 642, 851 N.W.2d 251, I would make an exception in this case for three reasons: (1) the circuit court and court of appeals based their respective decisions on hot pursuit;[2] (2)

---

[1] I join the majority opinion except the last sentence of ¶5 and footnote three.

[2] The circuit court relied on both Payton v. New York, 445 U.S. 573 (1980) and hot pursuit in its oral decision denying Delap's motion to suppress. However, in its written order, the circuit court relied only on hot pursuit. In addition, the court of appeals relied only on hot pursuit in affirming Delap's conviction. State v. Delap, 2016AP2196-CR, unpublished slip op. (Wis. Ct. App. April 20, 2017).

Delap presented only the hot pursuit question in his petition for review;[3] and (3) answering the hot pursuit question in this case may serve to alleviate any confusion stemming from our splintered decision in State v. Weber, 2016 WI 96, 372 Wis. 2d 202, 887 N.W.2d 554.

## I. THE OFFICERS WERE IN HOT PURSUIT OF DELAP WHEN THEY ENTERED HIS HOME.

¶45 "The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect the right of people to be secure in their persons . . . against unreasonable searches and seizures." State v. Tullberg, 2014 WI 134, ¶29, 359 Wis. 2d 421, 857 N.W.2d 120. This protection also bars police entry into a private residence without consent or a warrant. Welsh v. Wisconsin, 466 U.S. 740, 748 (1984). Wisconsin "adhere[s] to the basic principle that warrantless searches[, or entries,] are per se unreasonable unless they fall within a well-recognized exception to the warrant requirement." State v. Foster, 2014 WI 131, ¶32, 360 Wis. 2d 12, 856 N.W.2d 847. One well-recognized exception to the warrant requirement is the exigent circumstances doctrine. State v. Robinson, 2010 WI 80, ¶24, 327 Wis. 2d 302, 786 N.W.2d 463. The exigent circumstances doctrine provides that a warrantless search is reasonable under the Fourth

---

[3] The State raised Payton in its response brief to this court. Though petitioners may address only issues raised in the petition for review, respondents (such as the State in this case) may advance any argument in support of the judgment below. Cynthia E. v. La Crosse Cty. Human Servs., 172 Wis. 2d 218, 233, 493 N.W.2d 56 (1992).

Amendment if the need for the search is urgent and there is insufficient time to obtain a warrant. Tullberg, 359 Wis. 2d 421, ¶30.

¶46 We have identified four categories of exigent circumstances: "1) hot pursuit of a suspect, 2) a threat to the safety of a suspect or others, 3) a risk that evidence will be destroyed, and 4) a likelihood that the suspect will flee." State v. Howes, 2017 WI 18, ¶24, 373 Wis. 2d 468, 893 N.W.2d 812 (quoting State v. Richter, 2000 WI 58, ¶29, 235 Wis. 2d 524, 612 N.W.2d 29). The burden is on the State to "prov[e] that a warrantless home entry is justified by exigent circumstances." State v. Ferguson, 2009 WI 50, ¶20, 317 Wis. 2d 586, 767 N.W.2d 187. In the present matter, we are concerned with only the first category of exigent circumstances: hot pursuit.

¶47 The hot pursuit exception applies when officers are in "immediate or continuous pursuit of [a suspect] from the scene of a crime." State v. Weber, 2016 WI 96, ¶28, 372 Wis. 2d 202, 887 N.W.2d 554 (quoting Richter, 235 Wis. 2d 524, ¶29). Thus, the State must show that: (1) the officers were in immediate pursuit of the suspect; and (2) the officers had probable cause to arrest the fleeing suspect for a "jailable criminal offense." State v. Sanders, 2008 WI 85, ¶117, 311 Wis. 2d 257, 752 N.W.2d 713 (Prosser, J., concurring) (citing Welsh, 466 U.S. at 753).

A. The Officers were in Immediate Pursuit of Delap

¶48 The first element of the hot pursuit test requires that the officers actually be engaged in pursuing or chasing the defendant. While "'hot pursuit' means some sort of

3

chase, . . . it need not be an extended hue and cry in and about public streets." United States v. Santana, 427 U.S. 38, 43 (1976). A pursuit or chase that ends "almost as soon as it began [does] not render it any less a 'hot pursuit' sufficient to justify the warrantless entry." Sanders, 311 Wis. 2d 257, ¶109 (Prosser, J., concurring) (citing Santana, 427 U.S. at 43). "[A] suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under [United States v. Watson, 423 U.S. 411 (1976)], by the expedient of escaping into a private place." Santana, 427 U.S. at 40.

> Law enforcement is not a child's game of prisoner[']s base, or a contest, with apprehension and conviction depending upon whether the officer or defendant is the fleetest of foot. A police officer in continuous pursuit of a perpetrator of a crime committed in the officer's presence . . . must be allowed to follow the suspect into a private place, or the suspect's home if he chooses to flee there, and effect the arrest without a warrant.

Weber, 372 Wis. 2d 202, ¶30 (quoting Sanders, 311 Wis. 2d 257, ¶133 (Prosser, J., concurring)).

¶49 Stated otherwise, "[a]n officer in 'hot pursuit' does not need to make a split-second determination about the availability of 'hot pursuit' as an exigency . . . . [He must] determin[e] whether there is probable cause to make an arrest for a jailable crime. Presuming probable cause, pursuit . . . is justified." Sanders, 311 Wis. 2d 257, ¶117 (Prosser, J., concurring).

¶50 This element of the hot pursuit test is satisfied by the circumstances of the chase from Delap's driveway to his doorway. Although the chase was short, it nonetheless qualifies

4

as a chase because Sgt. Willmann pursued Delap from his driveway into his home after identifying himself as a police officer and ordering Delap to stop. See Santana, 427 U.S. at 43; Sanders, 311 Wis. 2d 257, ¶109 (Prosser, J., concurring).

B. The Officers had Probable Cause to Arrest Delap for a Jailable Offense.

¶51 The second element of hot pursuit requires that the officers had probable cause to believe that the defendant committed a jailable offense at the time of the chase. See Ferguson, 317 Wis. 2d 586, ¶29. "[I]n evaluating whether a warrantless entry is justified by exigent circumstances, [courts] should consider whether the underlying offense is a jailable or nonjailable offense, rather than whether the legislature has labeled that offense a felony or misdemeanor." Id. (citing Welsh, 466 U.S. at 753 (holding that a noncriminal traffic offense was not serious enough for exigent circumstances to exist); Sanders, 311 Wis. 2d 257, ¶93 (Prosser, J., concurring)).

¶52 Here, the officers had probable cause that Delap committed the jailable offense of obstructing an officer contrary to Wis. Stat. § 946.41(1). Obstructing an officer is a class A misdemeanor punishable by up to 9 months in jail and/or a fine not to exceed $10,000. Wis. Stat. § 946.41(1); see also Wis. Stat. § 939.51(3)(a).

¶53 In order to convict a person of obstructing an officer, the State must prove that the person knowingly: (1) obstructed an officer; (2) while the officer was doing any act in an official capacity; and (3) the officer was acting with

5

lawful authority.[4]  Wis. Stat. § 946.41(1); see also State v. Lossman, 118 Wis. 2d 526, 536, 348 N.W.2d 159 (1984).

¶54  Delap's conduct provided the officers with probable cause to believe he violated all three elements.  First, Delap knowingly obstructed the officers when he fled from them.  State v. Grobstick, 200 Wis. 2d 242, 249-50, 546 N.W.2d 187 (Ct. App. 1996).

¶55  Second, Delap knew the officers were acting in their official capacity because:  (1) the officers were the only people walking up the street at the time; (2) the officers were shining their flashlights in the direction of Delap; (3) the officers were in full uniform; and (4) the officers yelled "stop——police" when they saw Delap.  Sanders, 311 Wis. 2d 257, ¶121 (Prosser, J., concurring) (citing City of Middletown v. Flinchum, 765 N.E.2d 330, 331 (Ohio 2002)).

¶56  Third, we are to look at the totality of the circumstances to determine whether Delap knew the officers were acting with lawful authority.  See Lossman, 118 Wis. 2d at 543-44 ("[I]n order for the [S]tate to prove that the defendant knew or believed that the officer was acting with lawful authority, the defendant's subjective intent must be ascertained, based on the totality of the circumstances.").  Many of the same facts

---

[4] The pattern jury instructions list four elements for the crime of obstructing an officer.  Wis. JI——Criminal 1766 (2010). This is so because the pattern jury instructions construe the necessary mens rea (knowing) as a separate, fourth element of the offense.  Id.; see also State v. Young, 2006 WI 98, ¶57, 294 Wis. 2d 1, 717 N.W.2d 729.

6

that demonstrate Delap knew the officers were acting in their official capacities also demonstrate that he knew they were acting with lawful authority: (1) the officers were in uniform; (2) the officers were wearing their standard service belt; and (3) the officers yelled that they were police when Delap started running. See id. (holding that jury could infer defendant knew officer was acting with lawful authority because defendant: (1) saw the officer in uniform; (2) saw the officer's holstered weapon; and (3) was told why the officer was on his property). Based on these facts, the officers had probable cause to believe Delap committed the jailable offense of obstructing an officer.

## II. CONCLUSION

¶57 In his petition for review, Delap raised the issue of whether his arrest fell within the hot pursuit exception to the warrant requirement under the Fourth Amendment——the basis on which the court of appeals affirmed his conviction. State v. Delap, 2016AP2196-CR, unpublished slip op. (Wis. Ct. App. April 20, 2017). While I both fully understand that "it is axiomatic that this court is not bound by the issues presented or the arguments made by the parties,"[5] and agree with the majority's application of Payton, 445 U.S. 573, I believe it would have been prudent for the court to address the hot pursuit exception to help resolve any confusion stemming from our splintered decision in Weber, 372 Wis. 2d 202 last term.

---

[5] State v. Alexander, 2015 WI 6, ¶83, 360 Wis. 2d 292, 858 N.W.2d 662 (Gableman, J., concurring); see also Springer v. Nohl Elec. Prods. Corp., 2018 WI 48, ¶41, ___ Wis. 2d ___, ___ N.W.2d ___.

¶58 Accordingly, I respectfully concur.

¶59 I am authorized to state that Justice DANIEL KELLY joins this concurrence.