COURT OF APPEALS
DECISION
DATED AND FILED

September 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2372-CR**

Cir. Ct. No. 2017CF2401

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JULIAN DEWAYNE COLLAZO,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Rock County: BARBARA W. McCRORY, Judge. *Affirmed*.

Before Graham, P.J., Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Julian Dewayne Collazo appeals his judgment of conviction for first-degree intentional homicide, and on appeal, he challenges the pretrial denial of his motion for a change of venue.   Collazo argues that the circuit court erroneously exercised its discretion in denying his motion for a change of venue because, he contends, prejudicial media coverage surrounding his first trial impacted the community and the jury selection such that there was a reasonable likelihood that he could not receive a fair retrial in Rock County.   The circuit court denied Collazo's motion, concluding that the media coverage was not prejudicial and that an impartial jury could be selected from the county.   We conclude that the court did not erroneously exercise its discretion in denying Collazo's change of venue motion.   Accordingly, we affirm.

## BACKGROUND

¶2      In 2017, Collazo was charged with first-degree intentional homicide for the stabbing death of A.B.[1]   A jury trial in October 2019 ended in a mistrial because of a hung jury.   In February 2020, Collazo filed a motion for change of venue for the retrial, alleging that a fair trial could not be held in Rock County, the county in which it was alleged the crime occurred, because of prior media coverage of the case.   *See* WIS. STAT. § 971.22 (providing standards for a motion for change of trial venue).[2]

---

[1] Consistent with the policy of protecting victim privacy under WIS. STAT. RULE 809.86(4) (2023-24), we use initials that do not correspond to the victim's actual name.  All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Collazo also argued, in the alternative, for the circuit court to seat a jury from another county.  This issue is not developed on appeal, and we will not address it further.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address arguments that are undeveloped, including the lack of references to supporting legal authority).

¶3 Attached to Collazo's change of venue motion were twenty-three news articles published in late 2019 as a sampling of the media coverage of his case disseminated throughout the state and south-central Wisconsin. Most of the articles are brief online news summaries about: the background of the case, including that the victim had been stabbed more than thirty times; the daily trial proceedings; the "toxic" deliberations between the jurors and the resulting mistrial; and next steps. Several news articles in two local newspapers were lengthier and provided more specifics about the trial, including brief summaries of witness testimony, the physical evidence, and each party's theory of the case. Without the circuit court's consent or knowledge, a television channel also livestreamed a ten-minute portion of witness testimony from the first trial on Facebook. Facebook users responded to the livestream with negative comments about Collazo and the prosecutor.

¶4 Because of delays caused by the COVID-19 pandemic, the circuit court did not conduct a hearing on Collazo's change of venue motion until January 2021, almost one year after it was filed and more than fourteen months after the court had declared the first trial a mistrial. Following the hearing, the court issued an oral decision denying the change of venue motion and concluding that the media coverage did not prevent Collazo from receiving a fair trial in Rock County.

¶5 In July 2021, the second trial commenced with voir dire to select the jury. Most of the potential jurors did not indicate any familiarity with news coverage of the case or the case itself. Only two prospective jurors indicated that they had read or heard of some media coverage about the case. One of those jurors also indicated that she knew A.B.'s father, and the defense ultimately used a peremptory strike to remove that juror from the jury selection pool. The other

juror did not indicate any familiarity with the news coverage at the time of Collazo's first trial, but said that he had recently read something indicating that there was going to be a trial in the case. This person was not struck from the jury selection pool and served as a juror.

¶6 The jury convicted Collazo of first-degree intentional homicide and he was sentenced to life in prison without the possibility of extended supervision. Collazo appeals, arguing that the circuit court erroneously exercised its discretion in denying his motion to change venue for his retrial. We reject Collazo's arguments and affirm.

## DISCUSSION

¶7 Under the federal and Wisconsin constitutions, a criminal defendant has the right to a fair trial by an impartial jury. U.S. CONST. amend. VI; WIS. CONST. art. I, § 7; *State v. Moats*, 156 Wis. 2d 74, 99, 457 N.W.2d 299 (1990). Voir dire and a change of venue work in concert with other procedural mechanisms to guarantee a fair trial by an impartial jury. *McKissick v. State*, 49 Wis. 2d 537, 545, 182 N.W.2d 282 (1971). Voir dire in particular seeks to ensure the impartiality of jurors. *Moats*, 156 Wis. 2d at 99. Prospective jurors are presumed to be impartial unless and until the defendant proves bias. *State v. Louis*, 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990).

¶8 If a defendant is concerned that voir dire cannot provide an impartial jury, the defendant may request a change of venue. WIS. STAT. § 971.22. We review a circuit court's decision regarding a motion to change venue for an erroneous exercise of discretion. *Hoppe v. State*, 74 Wis. 2d 107, 110-11, 246 N.W.2d 122 (1976); *State v. Messelt*, 178 Wis. 2d 320, 327, 504 N.W.2d 362 (1993). To analyze whether the circuit court properly exercised its discretion

concerning a motion to change venue, "it is necessary for this court to determine whether there was a reasonable likelihood of community prejudice prior to, and at the time of, trial and whether the procedures for drawing the jury evidenced any prejudice on the part of the prospective or empaneled jurors." *Hoppe*, 74 Wis. 2d at 111.

¶9    With respect to whether there is a reasonable likelihood of community or juror prejudice, we consider eight factors: (1) the inflammatory nature of the media coverage; (2) the timing and specificity of the coverage in relation to the time of the trial; (3) the amount of difficulty in selecting the jury; (4) the jurors' familiarity with the coverage; (5) the defendant's use of challenges to jurors; (6) the State's participation in the adverse coverage; (7) the severity of the offense charged; and (8) the nature of the verdict rendered. *State v. Fonte*, 2005 WI 77, ¶31, 281 Wis. 2d 654, 698 N.W.2d 594 (*citing State v. Albrecht*, 184 Wis. 2d 287, 306, 516 N.W.2d 776 (Ct. App. 1994)).

¶10    In examining these factors, we conclude that the circuit court properly exercised its discretion in denying Collazo's motion to change venue because neither community nor juror prejudice was present to prevent the impaneling of an impartial jury in Rock County.

**The Media Coverage**

¶11    Three of the eight factors we examine address the media coverage itself. In denying Collazo's change of venue motion, the circuit court considered the inflammatory nature and the timing and specificity of the news articles attached to Collazo's motion. The court found that these news articles were not

5

inflammatory because: they referenced factual information that was publicly available and would likely be introduced in the retrial;[3] many articles focused on the "toxic" jury deliberations that resulted in the mistrial, which did not reflect negatively on Collazo; and the comments posted by Facebook users who watched the ten minutes of the trial that was live streamed were more inflammatory toward the State than toward Collazo. We agree with the circuit court that the media coverage was not inflammatory.

¶12     Objective, factual reporting alone is not inflammatory. *See Fonte*, 281 Wis. 2d 654, ¶32 (reporting on evidence produced in hearings or through public documents is merely informational, not inflammatory). In analyzing media coverage, courts are primarily concerned with the way the information was presented. *Briggs v. State*, 76 Wis. 2d 313, 327, 251 N.W. 2d 12 (1977). "News reports become objectionable when they editorialize, amount to 'rabble rousing' or attempt to influence public opinion against a defendant." *Id.*

¶13     Here, the majority of the articles Collazo attached in support of his change of venue motion were short online articles focused on the outcome of the first trial and the contentious jury deliberations. There is no indication that the articles were written in an attempt to influence the public's perception of Collazo or to editorialize about the case.

¶14     Collazo argues that three more in-depth news articles support his argument that the local news accounts were inflammatory. We are not persuaded

---

[3] Although we agree that there was no community or juror prejudice due to the factors we discuss here, we recognize that there may be instances where publicly reported factual information which likely will be introduced at trial may result in community or jury prejudice. However, we conclude that this circumstance did not exist here for the reasons stated.

that these articles were inflammatory because they did not use language that would be likely to rouse the public against Collazo and did not editorialize in favor of a particular position or outcome in the case. *See Fonte*, 281 Wis. 2d 654, ¶32 (articles that factually report trial evidence and arguments are not unduly prejudicial). These more detailed articles generally described the trial and refrained from using inflammatory language or providing opinions about Collazo to incite a certain reaction from the reader. *See Turner v. State*, 76 Wis. 2d 1, 27, 250 N.W.2d 706 (1977) ("In no instance was the defendant referred to as the perpetrator or did the articles call for his conviction."). Additionally, in-depth coverage of a gruesome crime does not automatically make coverage inflammatory. *See Messelt*, 178 Wis. 2d 320, 325-30 (newspaper articles were not inflammatory despite "graphic detail" of sexual assault, armed burglary, and false imprisonment).

¶15 Collazo also argues that the ten-minute Facebook livestream of the trial and the responsive comments further prejudiced Collazo, and were unknown to the circuit court and not addressed in its decision. We note that Collazo did not include a record cite to the Facebook livestream video, nor does he describe the portion of the trial that was livestreamed on Facebook; it appears that the only materials Collazo included with his motion were the Facebook user comments to the livestream. In the absence of evidence showing the contrary, we must assume that the portion of the trial that was livestreamed supports the circuit court's determination that the media coverage was not inflammatory. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("It is the appellant's responsibility to ensure completion of the appellate record and 'when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's

7

ruling.'" (citation omitted)). In terms of the Facebook comments, we reject Collazo's suggestion that these comments were inflammatory toward Collazo. As found by the circuit court, these comments were more inflammatory toward the State than Collazo. Further, there are no allegations that the video was reproduced elsewhere or that the responsive comments were from anyone but members of the Facebook community rather than the media. While the Facebook comments could be viewed as editorializing, they do not rise to the level of "rabble rousing" or an attempt to influence public opinion against Collazo. *See Turner*, 76 Wis. 2d at 27 (editorial writing is only inflammatory if it attempts to incite prejudice against a party).

¶16 We next consider the timing and specificity of the coverage. The circuit court found that much of the media coverage was distributed statewide rather than focused in Rock County, and that potential jurors were not likely to remember the case because of the significant time that had passed between the first trial and the retrial and the intervening focus on COVID-19. We agree with the court that the significant interval between the press coverage surrounding Collazo's 2019 trial and his 2021 retrial mitigated any potential inflammatory impact of the media coverage.

¶17 At the hearing on the change of venue motion in January 2021, trial counsel stated that he "[didn't] think there's been much, if any, media coverage of the case since the [first] trial." Indeed, most of the articles Collazo presented in his motion were published in October 2019 with three others being published in December 2019. There was a period of approximately nineteen months between the publication of most of the news articles and Collazo's retrial in July 2021. Consequently, "the memories and passions of readers had time to fade[.]" *Messelt*, 178 Wis. 2d at 330 (a gap of approximately six months to one year

between two clusters of articles and trial allowed passions to fade); *Fonte*, 281 Wis. 2d 654, ¶34 (a seven-month gap between articles and trial allowed passions to fade); *State v. Ritchie*, 2000 WI App 136, ¶¶20, 22, 26, 237 Wis. 2d 664, 614 N.W.2d 837 (a cooling-off period of approximately one year and six months "contribute[d] to an environment conducive to a fair trial").

¶18 Moreover, as found by the circuit court, the media coverage was largely targeted to a statewide audience rather than directed specifically at Rock County residents. Although the three articles to which Collazo specifically refers in his appellate brief-in-chief involve two local newspapers, there is no indication that the media coverage garnered significantly more attention in Rock County than in the rest of the state, and the court specifically referenced the statewide coverage of the case to include a Minneapolis-based newspaper; U.S. News and World Report; and Wausau, Green Bay, and statewide television channels. Finally, Collazo also concedes in his appellate reply brief that there is no evidence that the State participated in any adverse pretrial publicity, another factor that supports the court's denial of the change of venue motion.

¶19 In sum on these factors, we conclude that the lack of an inflammatory nature, the timing and specificity of the media coverage, and the State's lack of participation in any adverse media coverage weigh against Collazo's change of venue motion.

**The Jury**

¶20 We also consider three factors that specifically address the process of impaneling the jury: the amount of difficulty encountered in selecting the jury; the familiarity of jurors with the coverage; and the defendant's use of preemptive challenges to jurors. *Hoppe*, 74 Wis. 2d at 126. The impartiality of the jury is

only threatened when nearly all jurors have seen media coverage of the case and formed opinions based on that coverage. *See Briggs*, 76 Wis. 2d at 328 (right to impartial jury not violated where "almost all members of the [jury] panel had heard or read about the case"); *State v. Dean*, 67 Wis. 2d 513, 528, 227 N.W.2d 712 (1975) (right to impartial jury maintained even where 26 of 68 prospective jurors were excused because of predetermined belief of defendant's guilt).

¶21     Here, in denying Collazo's motion to change venue, the circuit court referenced that it did not encounter any unusual challenges or difficulties selecting jurors from Rock County for the first trial, and did not anticipate a problem in selecting jurors for the retrial which was to occur a significant amount of time after the trial and after the news coverage to which Collazo objected. Indeed, this prediction by the court was borne out by the relative ease with which a jury was selected for the retrial.

¶22     During the voir dire process, which took less than one-half of a day, the circuit court and the parties asked numerous questions designed to identify prospective jurors who were aware of news accounts about the case. Specifically, the court asked them whether they had "heard anything about this case in the news at this point that you can think of," including any "news, newspaper articles, television, radio, that sort of stuff." Only two prospective jurors indicated that they had heard news about the case, and none of the prospective jurors expressed preconceived opinions about Collazo's guilt. *See Ritchie*, 237 Wis. 2d 664, ¶27, ("jury was easily selected" where twenty-one prospective jurors had heard of the case but only one expressed an opinion about it). As noted, out of the two jurors who indicated that they had heard about the case, one estimated that she had read three articles about the case over the course of three years and that she knew A.B.'s father. This potential juror was subjected to individual voir dire outside of

the presence of the jury pool and was ultimately removed by Collazo through a peremptory strike. Collazo did not utilize a peremptory strike to remove the other juror who had heard that "there was going to be a trial this week," and this individual was impaneled as a juror.

¶23 Here, Collazo fails to advance an argument with cites to the record detailing any occurrences in the jury selection process that indicate that the jury was prejudiced against him either during jury selection or at trial, and we find none.

¶24 In sum on this issue, we conclude that the jury selection process indicated no prejudice on the part of the prospective or impaneled jurors and supports the circuit court's exercise of discretion in denying Collazo's change of venue motion.

### The Crime

¶25 The last two factors we consider in reviewing the circuit court's denial of Collazo's change of venue motion concern the severity of the offense charged and the nature of the verdict returned. Collazo was charged with and convicted of first-degree intentional homicide, which carries a penalty of life imprisonment, the most severe criminal punishment in Wisconsin law. WIS. STAT. §§ 940.01(1)(a); 939.50(3)(a). Although the nature of a crime is a factor to be considered, it is not conclusive of prejudice. *See Turner*, 76 Wis. 2d 1 at 27 (coverage of a young girl's disappearance whose body was later found was not prejudicial). While these two factors weigh in favor of Collazo's request for a change of venue, these factors are not conclusive and are offset by the six other factors which establish that there was no reasonable likelihood of community

11

prejudice prior to, or at the time of, trial and that the procedures for selecting the jury evidence no prejudice on the part of the prospective or impaneled jurors.

¶26 In sum, we conclude that there was no reasonable likelihood of any prejudice from the community or from the jury selection process and the jurors impaneled for the retrial which hindered Collazo receiving a fair trial in Rock County. Accordingly, the circuit court properly denied Collazo's motion to change the venue of the retrial.

## CONCLUSION

¶27 For the foregoing reasons, we affirm the judgment of conviction.

*By the Court.—*Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.